J-A13018-18

2018 PA Super 394

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KEITH RICHARD CALLEN | : | |
| | : | |
| Appellant | : | No. 883 WDA 2017 |

Appeal from the Judgment of Sentence May 9, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0009929-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KEITH CALLEN | : | |
| | : | |
| Appellant | : | No. 884 WDA 2017 |

Appeal from the Judgment of Sentence May 9, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0009926-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KEITH RICHARD CALLEN | : | |
| | : | |
| Appellant | : | No. 1590 WDA 2017 |

Appeal from the Judgment of Sentence September 27, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0009929-2016

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
KEITH CALLEN :
:
Appellant : No. 1591 WDA 2017

Appeal from the Judgment of Sentence September 27, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0009926-2016

BEFORE:   OLSON, J., DUBOW, J., and MUSMANNO, J.

OPINION BY OLSON, J.:                         FILED OCTOBER 31, 2018

Appellant, Keith Callen, appeals from the judgment of sentence entered on May 9, 2017, as made final by the denial of Appellant's post-sentence motion on June 1, 2017, and from the amended judgment of sentence, entered on September 27, 2012, which corrected a clerical error in the original sentence.  We dismiss Appellant's appeals at docket numbers 1590 WDA 2017 and 1591 WDA 2017 as duplicative.  We also vacate Appellant's judgment of sentence, reverse his convictions, and remand.

On October 4, 2016, the Commonwealth filed two separate informations against Appellant in the Court of Common Pleas of Allegheny County.  The first information, which was filed at Docket Number CP-02-CR-0009926-2016 (hereinafter "Case One"), accused Appellant of committing numerous sexual offenses against D.G. and K.G. when they were minors.  The second

- 2 -

information, filed at Docket Number CP-02-CR-0009929-2016 (hereinafter "Case Two"), accused Appellant of committing numerous sexual offenses against B.M. when B.M was a minor. That day, the Commonwealth provided Appellant with notice that it intended to try the offenses at both informations together. See Pa.R.Crim.P. 582(B)(1); Commonwealth's Rule 582(B)(1) Notice, 10/4/16, at 1.

On October 31, 2016, Appellant filed pre-trial motions at both docket numbers and claimed, among other things: that the trial court must sever the cases at the two docket numbers and that, as to Case One, venue was improper in Allegheny County.[1] Appellant's Pre-Trial Motion at Case Two,

_____

[1] Within Appellant's pre-trial motion at Case One, Appellant confused the terms "subject matter jurisdiction" and "venue." See Appellant's Pre-Trial Motion at Case One, 10/31/16, at ¶¶ 11-22. Specifically, Appellant claimed that, since all of the events relating to D.G. and K.G. occurred in Butler County, the trial court was required to "enter an order dismissing the criminal information [at Case One] as the Allegheny County Court of Common Pleas [] possesses no subject-matter jurisdiction by which to preside over this criminal prosecution." Id. at "Wherefore" Clause; but see Commonwealth v. Bethea, 828 A.2d 1066, 1074 (Pa. 2003) ("all courts of common pleas have statewide subject matter jurisdiction in all cases arising under the Crimes Code"); Commonwealth v. Gross, 101 A.3d 28, 36 (Pa. 2014) ("no provision in our criminal procedural rules permits dismissal as a remedy for improper venue. To the contrary, our rules repeatedly speak to transferring cases to another judicial district when improper venue is determined"). Nevertheless, the analysis contained in Appellant's pre-trial motion clearly demonstrated that his claim was a challenge to the venue of Case One. See Appellant's Pre-Trial Motion at Case One, 10/31/16, at ¶¶ 20 and 22 (declaring that he was entitled to relief because "the overt acts respective to each count filed in [Case One] were allegedly committed either in the home of the [] victims' stepfather or in [Appellant's] residence . . . [and both homes are located] in Clinton Township . . . [which] is most certainly . . . a municipality of Butler County. . . . Moreover, . . . the events that supposedly happened in Butler

10/31/16, at ¶¶ 30-38; Appellant's Pre-Trial Motion at Case One, 10/31/16, at ¶¶ 11-22 and 38-44. With respect to the severance issue, Appellant claimed that the trial court must sever the offenses charged at Case One from those at Case Two because the evidence at each docket number would not be admissible in a separate trial for the other and the offenses were not based on the same act or transaction. See Appellant's Pre-Trial Motion at Case One, 10/31/16, at ¶¶ 38-44.

As to the venue issue, Appellant claimed that, with respect to D.G. and K.G., all of the alleged criminal acts occurred in Butler County, Pennsylvania – not Allegheny County. Further, Appellant claimed, even though the Commonwealth accused him of sexually abusing B.M. in Allegheny County, the events with respect to D.G. and K.G. were an "entirely different criminal episode than that which [Appellant was accused of committing against B.M.] in Allegheny County." See id. at ¶¶ 11-22. Thus, in essence, Appellant claimed that, since all of the events as to D.G. and K.G. occurred in Butler County, the trial court was required to transfer Case One to Butler County. See id.; see also Appellant's Brief at 47 and 42 n.16 (claiming that the trial court erred when it refused to "transfer[ Case One] to Butler County").

_____

County form an entirely different criminal episode than that which is pleaded in Allegheny County"). Further, both the trial court and the Commonwealth understood that Appellant's challenge concerned venue and neither the trial court nor the Commonwealth have ever claimed that Appellant waived his venue claim at trial or on appeal. See Commonwealth's Brief at 23-30 (recognizing that Appellant's claim concerned venue and analyzing the issue); Trial Court Opinion, 10/2/17, at 17-20 (same).

- 4 -

On January 3, 2017, the trial court heard oral argument on Appellant's pre-trial motions. See N.T. Oral Argument, 1/3/17, at 9-14. During this argument, the Commonwealth conceded that the criminal acts with respect to D.G. and K.G. occurred in Butler County. Id. at 11; see also Commonwealth's Brief at 23-24 (conceding that "the[] assaults [against D.G. and K.G.] occurred in Butler County during the years 2000-2002"). However, the Commonwealth claimed that venue in Case One was proper in Allegheny County "because these sexual assaults have taken place over a length of time and this conduct is a course of conduct [and because] the district attorney's offices [of Allegheny County and Butler County] consulted with each other and it was determined that Allegheny County would prosecute as to all victims here." N.T. Oral Argument, 1/3/17, at 11-12. At the conclusion of argument, the trial court denied the motions. Id. at 14.

Appellant proceeded to a jury trial on February 27, 2017. The trial court thoroughly summarized the evidence presented during the trial:

> [With respect to victim B.M., at Case Two, the evidence] established that[,] in 2010, when she was 12 years old, [B.M.] began to take gymnastics lessons at Jewart's Gymnastics in the Hampton Township area of Allegheny County. [Appellant] was one of several coaches that worked with her group. In December 2010, [B.M.] began to take private lessons with [Appellant] one [] day a week, while also continuing her group lessons with [Appellant] and other coaches four [] days a week. When she was 12 and 13 years old, [Appellant] began to text her, initially about her lessons and, later, about school and personal matters. During this time[,] he told her that if he was her age, he'd want to date her.

In [March 2012, Appellant] was fired from Jewart's Gymnastics and began working at Trinity Gymnastics in the West Deer Township area of Allegheny County. At [Appellant's] request, [B.M.] quit training at Jewart's and began training with [Appellant] at Trinity Gymnastics. In [August 2012, B.M.] attended Woodward Gymnastics Camp and [Appellant] went with her, despite the fact that he was not on the camp's coaching staff. During this time period, [Appellant] was texting [B.M.] pictures of himself and telling her that he loved her. At some point, [B.M.'s] mother saw the text messages, became upset[,] and forbade [B.M.] from having any more contact with [Appellant]. [Appellant] was removed from her group at Trinity Gymnastics and the two had no contact for almost a year, until [B.M.] attended a gymnastics camp at the University of Michigan in the summer of 2013, where [Appellant] was coaching. [B.M.] wanted to return to training with [Appellant] and an agreement was made with [B.M.'s] mother whereby she would be permitted to return to training with [Appellant] but that her mother had to be present at all times.

In [July 2013, B.M.'s] mother did not attend a training session. At that session, [Appellant] had [B.M. lie down] on the vault table so he could stretch her. He positioned her so that she was [lying] on her back with her leg on his shoulder and he put his finger under her shorts and underpants and inserted it into her vagina. [B.M.] testified that this touching occurred several times until the end of [August 2013]. Throughout this time, [Appellant repeatedly told B.M.] that he did not have a good home life.

In August 2013, [Appellant] left Trinity for reasons unknown to [B.M.] and moved to the Elite Athletic Center in Butler[, Pennsylvania]. [B.M.] and four [] other gymnasts went with him. [Appellant] continued to train [B.M.] and continued to put his fingers in her vagina while he was stretching her. This occurred multiple times throughout 2013 and 2014, when [B.M.] was in 10th grade. As the holiday season approached, [Appellant] gave [B.M.] several gifts, including a Victoria's Secret sweatshirt and leggings and an infinity ring that said "Love" on the front and had "Forever Love" engraved on the inside.

In [March 2014, Appellant took B.M.] and several other gymnasts to a state competition. [Appellant] picked [B.M.] up first and before the other students arrived, he had sexual intercourse with her in his vehicle. [At the time, B.M. was 16 years old]. . . .

Thereafter, [Appellant], while purporting to rehab [B.M.] from an ACL tear, would have [B.M.] (who was by then 17 and driving herself to gymnastics practice) meet him in the parking lot of the Home Depot in Butler before practice and they would have sexual intercourse in his car. Additionally, he requested oral sex from [B.M.], but she refused. This pattern continued until [November 2015], when [B.M. and Appellant had an argument and B.M. ended the relationship]. Thereafter, [B.M.] began to attend therapy and disclosed the abuse to her therapist, who reported the incidents to Child Line.

With regard to the charges at [Case One], the Commonwealth presented the testimony of [sisters D.G. and K.G. D.G. was born in 1993 and K.G. was born in 1994]. They testified that when they were [four and three years old, respectively], their mother married Mearl Trapper Clark, the best friend of [Appellant] since childhood. Over the years Clark was married to their mother, the girls had many contacts with [Appellant], whom they called "Uncle Keith" and had visited his home on many occasions.

On several occasions [from approximately 1998 until 2002, when D.G. was between the ages of five and nine and K.G. between the ages of four and eight], Clark brought the girls to [Appellant's Butler County] home or [Appellant] would come to Clark's [Butler County] home when his wife was at work. [Appellant] and Clark instructed the girls to put on skirts and remove their underpants. They then asked the girls to do cartwheels and would pose them bent over with their legs spread apart and photographed them.

On other occasions, [Appellant] would take [K.G.] into another part of his house by herself and would instruct her to take off her clothing and would then touch her vagina with his fingers and mouth.

> Mearl Clark testified and confirmed [D.G. and K.G.'s] testimony and indicated that on two occasions he saw [Appellant] touch [K.G.'s] vagina and put his penis between her legs to simulate intercourse.
>
> [Further, D.G. and K.G. testified that, even though Appellant's abuse of them ended in 2002, they did not report the abuse until 2016. D.G. and K.G. both testified that they finally stepped forward to report the abuse after they saw news stories that Appellant had been arrested for sexually abusing B.M. See N.T. Trial, 2/28/17, at 184-185 and 230.]

Trial Court Opinion, 10/2/17, at 2-4.

The jury found Appellant guilty of all charged crimes. Specifically, at Case One, where the victims were D.G. and K.G., the jury found Appellant guilty of: aggravated indecent assault (victim under 13 years of age) (against K.G.); indecent assault (victim under 13 years of age) (against K.G.); endangering the welfare of a child (against K.G.); corruption of minors (against K.G.), endangering the welfare of a child (against D.G.); and, corruption of minors (against D.G.).[2] Further, at Case Two, where B.M. was the victim, the jury found Appellant guilty of: aggravated indecent assault (victim under 16 years of age); sexual assault by sports official; indecent assault (victim under 16 years of age); unlawful contact with a minor; corruption of minors (defendant age 18 or above); and, corruption of minors.[3]

_____

[2] 18 Pa.C.S.A. §§ 3125(a)(7), 3126(a)(7), 4304(a), 6301(a)(1), 4304(a), and 6301(a)(7), respectively.

[3] 18 Pa.C.S.A. §§ 3125(a)(8), 3124.3(a), 3126(a)(8), 6318(a)(1), 6301(a)(1)(ii), and 6301(a)(1)(i), respectively.

On May 9, 2017, the trial court sentenced Appellant to serve an aggregate term of 13 to 26 years in prison for his convictions. The trial court denied Appellant's post-sentence motions on May 31, 2017 and Appellant filed timely notices of appeal.[4] Appellant raises six claims on appeal:

> [1.] Whether the trial court erred in denying [Appellant's] challenge to its jurisdiction/venue over a case in Allegheny County where all of the purported criminal activity occurred in Butler County?

_____

[4] On September 27, 2017 (while the current appeal was pending), the trial court noticed clerical errors in its sentencing orders. See Trial Court Order, 9/27/17, at 1 n.1. Specifically, the trial court confused the docket numbers – but not the offenses, counts, or victims – when it orally pronounced Appellant's sentence. See N.T. Sentencing, 5/9/17, at 31; Original Sentencing Order at Case One, 5/9/17, at 1-2; Original Sentencing Order at Case Two, 5/9/17, at 1-2. The confusion then caused an erroneous transcription of the written sentencing order. Nevertheless, the trial court amended its sentencing orders on September 27, 2017 and Appellant filed protective notices of appeal from the trial court's September 27, 2017 amended sentencing orders.

We agree with the trial court that the errors it corrected constituted clerical errors, as they were "patent defect[s] or mistake[s in the original orders, that were made apparent after viewing] the record." See Commonwealth v. Holmes, 933 A.2d 57, 66 (Pa. 2007), quoting Commonwealth v. Klein, 781 A.2d 1133, 1135 (Pa. 2001) (emphasis omitted). Therefore, we agree that the trial court possessed "the inherent, common-law authority to correct [the] clear clerical errors in its [sentencing] orders" and that "[t]his authority exist[ed] even after the 30-day time limitation for the modification of orders expire[d]." Commonwealth v. Thompson, 106 A.3d 742, 766 (Pa. Super. 2014) (internal corrections and quotations omitted). Further, since Appellant does not claim that the trial court lacked jurisdiction to correct the clerical errors in its orders, we dismiss Appellant's appeals at docket numbers 1590 WDA 2017 and 1591 WDA 2017 as duplicative of his appeals at docket numbers 883 WDA 2017 and 884 WDA 2017.

[2.] Whether the evidence was insufficient to support [Appellant's] convictions for endangering the welfare of children where the Commonwealth failed to prove that [Appellant] was either a parent, guardian, or person supervising the welfare of the children involved?

[3.] Whether the evidence was insufficient to support [Appellant's] conviction for sexual assault where the Commonwealth failed to prove that a sports program was involved in the offense?

[4.] Whether the trial court erred by denying [Appellant's] motions to sever the two cases tried against him?

[5.] Whether the trial court erred in sentencing [Appellant] to an illegal sentence for his conviction of indecent assault graded as a second-degree misdemeanor where the sentence imposed exceeded two years' imprisonment?

[6.] Whether the trial court abused its discretion in imposing unreasonable and outside the aggravated range sentences for [Appellant's] indecent assault, sexual assault, and endangering the welfare of children convictions?

Appellant's Brief at 13-14 (some internal capitalization omitted).[5]

Appellant first claims that the trial court erred when it denied his pre-trial motion to transfer Case One to Butler County. We agree.

Our Supreme Court explained:

Jurisdiction relates to the court's power to hear and decide the controversy presented. All courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code. . . . Venue, on the other hand, refers to the convenience and locality of trial, or the right of a party to have the controversy brought and heard in a particular judicial district. Venue assumes jurisdiction exists and it can only be proper where jurisdiction already exists. Even though all common pleas courts may have jurisdiction to resolve a

_____

[5] For ease of discussion, we have re-numbered Appellant's claims on appeal.

- 10 -

case, such should only be exercised in the judicial district in which venue lies. Venue in a criminal action properly belongs in the place where the crime occurred.

Our criminal procedural rules provide a system in which defendants can seek transfer of proceedings to another judicial district due to prejudice or pre-trial publicity. Such decisions are generally left to the trial court's discretion. Venue challenges concerning the locality of a crime, on the other hand, stem from the Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution, both of which require that a criminal defendant stand trial in the county in which the crime was committed, protecting the accused from unfair prosecutorial forum shopping.[6] Thus, proof of venue, or the locus of the crime, is inherently required in all criminal cases.

_____

[6] The Sixth Amendment to the United States Constitution provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. Const., Amdt. 6 (emphasis added).

Article I, Section 9 of the Pennsylvania Constitution declares:

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers

Commonwealth v. Gross, 101 A.3d 28, 32-33 (Pa. 2014) (internal citations, quotations, and corrections omitted); see also Bethea, 828 A.2d at 1075 ("[v]enue in a criminal action properly belongs in the place where the crime

_____

> or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

Pa. Const., Art. I, § 9 (emphasis added).

As we have explained, Article I, Section 9 of the Pennsylvania Constitution, "like the Sixth Amendment [to the United States Constitution,] relates to vicinage [rather] than venue; i.e. it guarantees the right to be tried by jurors summoned from the county where the crime occurred." Commonwealth v. Katsafanas, 464 A.2d 1270, 1274 (Pa. Super. 1983); see also 4 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 16.1(b) ("Whereas venue refers to the locality in which charges will be brought and adjudicated, vicinage refers to the locality from which jurors will be drawn"). Nevertheless, as Professors LaFave, Israel, King, and Kerr explain in their treatise on criminal procedure:

> Though a provision may speak only to vicinage or only to venue, it typically builds upon the assumption that the locality requirements of venue and vicinage will go hand in hand. Thus, a provision giving to the defendant a right to a jury selected from a judicial district constituting the vicinage commonly will also grant, by implication, a parallel right to be tried in that judicial district; for unless the legislature specifically provides otherwise, the prevailing assumption is that the trial should be held in the district from which the jury is selected.

4 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 16.1(b); see, e.g., 42 Pa.C.S.A. § 8702(a) ("[i]f, upon motion and following a hearing, the court of common pleas determines that a fair and impartial jury cannot be impaneled in the county where the criminal complaint is filed, as an alternative to issuing an order for a change of venue the court may direct that jurors be impaneled from another county").

occurred. . . . A change of venue from the situs of the action to a different locale is permitted only upon good cause shown").

The constitutional requirement that, generally, a criminal defendant must "stand trial in the county in which the crime was committed" provides a number of protections to the defendant, including protecting the defendant from prosecutorial forum shopping (as to both judges and juries) and providing the defendant with the convenience of having relevant evidence and witnesses more readily accessible (for, it is more likely that relevant evidence and witnesses will be located in the place where the crime occurred). 4 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 16.1(c); see also Gross, 101 A.3d at 32-33 (declaring: the "require[ment] that a criminal defendant stand trial in the county in which the crime was committed [protects] the accused from unfair prosecutorial forum shopping"); Bethea, 828 A.2d at 1075 (declaring: "the necessity of bringing a party to answer for his actions in the place where the crime itself occurred [recognizes] that [this] is where the evidence and the witnesses will most likely be located").

Further, operating under the assumption that most defendants will be accused of committing a crime at or near their place of residence (which was undoubtedly true in 1790, when Article I, Section 9 of the Pennsylvania Constitution was adopted), the vicinage and venue requirements allow most defendants to stand trial near their residence, near the place where their character witnesses will likely be located, close to their friends and family (who may provide them with moral support and aid in preparing for trial), and in an

area where they are "more likely to know the local attorneys and thereby have greater confidence in [their] selection of counsel." 4 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 16.1(c); see also William Goldman Theatres, Inc. v. Dana, 173 A.2d 59 (Pa. 1961) ("[n]o provisions in the Pennsylvania Constitution are more fundamental to the liberty of the individual [than Article I, Sections 6 and 9]. What they ordain is that the individual is entitled to a public trial by an impartial jury of the vicinage in every situation in which he would have been entitled to such a trial at the time of the adoption of our State Constitution of 1790 and ever since under our succeeding constitutions").

"Because the Commonwealth selects the county of trial, . . . it [bears] the burden of proving venue is proper." Gross, 101 A.3d at 33. Though, since "[v]enue merely concerns the judicial district in which the prosecution is to be conducted" – and is "not an essential element of the crime, nor does it relate to guilt or innocence" – the Commonwealth is not tasked with proving venue beyond a reasonable doubt. Id. Rather, our Supreme Court held, where the defendant properly challenges the Commonwealth's chosen venue, the Commonwealth is tasked with the burden of proving, by a preponderance of the evidence, that venue is proper. Id. "Appellate review of venue challenges, similar to that applicable to other pre-trial motions, [] turn[s] on whether the trial court's factual findings are supported by the record and its conclusions of law are free of legal error." Id. at 33-34.

With respect to Case One (relating to complainants D.G. and K.G.), Appellant filed a pre-trial motion and claimed that venue in Allegheny County was improper, as all of the criminal acts occurred in Butler County and the crimes were an "entirely different criminal episode than that which [Appellant was accused of committing against B.M.] in Allegheny County." Appellant's Pre-Trial Motion at Case One, 10/31/16, at ¶¶ 11-22. Further, during oral argument on the motion, the Commonwealth conceded that the criminal acts against D.G. and K.G. occurred in Butler County. N.T. Oral Argument, 1/3/17, at 11. Notwithstanding this fact, the trial court denied Appellant's pre-trial motion by, essentially, reasoning that Appellant's offenses against D.G. and K.G. were part of the "same criminal episode"[7] as Appellant's offenses against

_____

[7] In analyzing Appellant's venue claim, the trial court did not specifically use the phrase "same criminal episode." Rather, the trial court declared that "[t]he charges relating to [D.G.] and [K.G.] were . . . joined with [B.M.'s] charges given the course of conduct and similarities of the cases." Trial Court Opinion, 10/2/17, at 20. We might assume that the trial court's use of the phrase "course of conduct" was an oversight, since our venue rules simply do not permit the Commonwealth to bring a criminal charge in a foreign county merely because of a shared "course of conduct." See Pa.R.Crim.P. 130(A). Nevertheless, if the trial court intended to permissively join Case One with Case Two notwithstanding the venue issue, the trial court was incorrect. Simply stated, our permissive joinder rules do not override the constitutional requirement that "the accused hath a right to . . . a speedy public trial by an impartial jury of the vicinage" or its corollary that "[v]enue in a criminal action properly belongs in the place where the crime occurred." Pa. Const., Art. I, § 9; Bethea, 828 A.2d at 1075. To be sure, our venue rules are far more narrow than our permissive joinder rules. Thus, where Pennsylvania Rule of Criminal Procedure 582 permits offenses in separate informations to be tried together if "the evidence of each of the offenses would be admissible in a separate trial for the other," our venue rules borrow the language of our compulsory joinder statute – and only allow an offense to be tried in a foreign

B.M. and because the decision to charge Appellant with all crimes in Allegheny County "was made following the consultation of the Allegheny and Butler County District [Attorneys'] Offices in conjunction with the Pennsylvania State Police[,] which was the investigating police agency." See Trial Court Opinion, 10/2/17, at 17-20. We conclude that the trial court erred in not transferring Case One to Butler County and that this error mandates that we vacate Appellant's judgment of sentence and reverse Appellant's convictions.

As noted, the general rule is that "[v]enue in a criminal action properly belongs in the place where the crime occurred." Bethea, 828 A.2d at 1075;

_____

judicial district if it is part of a "single criminal episode" as an offense that occurred within the district. See Pa.R.Crim.P. 582(A)(1)(a) and 130(A)(3); see also 18 Pa.C.S.A. § 110(1)(ii). Hence, in cases where our venue and permissive joinder rules are in irreconcilable conflict, the more specific venue rules control over the more general permissive joinder rule. See, e.g., 1 Pa.C.S.A. § 1933 ("Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail") (emphasis added); Pa.R.Crim.P. 101(C) ("To the extent practicable, [the Rules of Criminal Procedure] shall be construed in consonance with the rules of statutory construction").

Yet, given the trial court's remaining analysis on the issue (which noted similarities between the cases), we assume that the trial court intended to declare that Case One and Case Two were part of the same criminal episode – as that is a recognized exception to the general rule that "[v]enue in a criminal action properly belongs in the place where the crime occurred." Bethea, 828 A.2d at 1075; Pa.R.Crim.P. 130(A)(3).

Pa.R.Crim.P. 130(A) ("[a]ll criminal proceedings in . . . court cases shall be brought before the issuing authority for the magisterial district in which the offense is alleged to have occurred"). Nevertheless, some exceptions to this general rule exist, one of which is:

> When charges arising from the same criminal episode occur in more than one judicial district, the criminal proceeding on all the charges may be brought before one issuing authority in a magisterial district within any of the judicial districts in which the charges arising from the same criminal episode occurred.

Pa.R.Crim.P. 130(A)(3); see also Pa.R.Crim.P. 555 (concerning transfer of proceedings in "cases in which charges arising from a single criminal episode occur in more than one judicial district").[8]

The "single criminal episode" test originates from Pennsylvania's compulsory joinder statute. See 18 Pa.C.S.A. § 110(1)(ii); Commonwealth v. Hunter, 768 A.2d 1136, 1140-1141 (Pa. Super. 2001) (quoting the Pennsylvania Supreme Court's compulsory joinder analysis in Commonwealth v. Hude, 458 A.2d 177, 181-182 (Pa. 1983) to define "single criminal episode" in the context of venue).[9] As we have held:

_____

[8] There are a number of other exceptions to the general rule; however, no other exception is relevant to this case. See Pa.R.Crim.P. 130(A); 244; 555; and, 42 Pa.C.S.A. § 4551(d) (concerning multicounty investigating grand juries).

[9] The current version of the compulsory joinder statute prohibits a successive prosecution if "[t]he former prosecution resulted in an acquittal or in a conviction" and the successive prosecution is for an "offense based on the same conduct or arising from the same criminal episode, if such offense

a condition precedent to the exercise by a single county to [venue] in a case involving multiple offenses in various counties is: the offense must constitute a single criminal episode. If a number of charges are logically or temporally related and share common issues of law and fact, a single criminal episode exists. When we ascertain whether a number of statutory offenses are "logically related" to one another, the court should initially inquire as to whether there is a substantial duplication of factual, and/or legal issues presented by the offenses. The mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require an absolute identity of factual backgrounds.

The temporal relationship between criminal acts will be a factor which frequently determines whether the acts are "logically related." However, the definition of a "single criminal episode" should not be limited to acts which are immediately connected in time. "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.

Commonwealth v. Witmayer, 144 A.3d 939, 946-947 (Pa. Super. 2016) (internal citations and paragraphing and some internal quotations omitted).

In this case, Appellant's crimes against D.G. and K.G. and Appellant's crimes against B.M. do not constitute a single criminal episode. First, the

_____

was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense." 18 Pa.C.S.A. § 110(1)(ii) (emphasis added).

temporal relationship between the crimes is attenuated: Appellant committed the crimes against D.G. and K.G. beginning in, approximately, the year 1998 or 2000 and lasting until (at the latest) the year 2002;[10] however, Appellant did not begin to "groom"[11] B.M. until the year 2010. Further, Appellant's abuse of D.G. and K.G. has no logical relationship to his abuse of B.M. Initially, Appellant's abuse of D.G. and K.G. and his access to the girls did not lead to his abuse of, or access to, B.M. Rather, Appellant's abuse of D.G. and K.G. arose out of his relationship with the girls' then-stepfather, Mearl Clark, and lasted until Clark was arrested for his abuse, whereas Appellant's abuse of B.M. began independently and was facilitated by Appellant's role as B.M.'s gymnastics coach. In addition, at the time of the abuse, neither D.G. nor K.G. knew B.M. and B.M. did not know either D.G. or K.G. Simply stated, there

_____

[10] There was conflicting testimony as to when Appellant abused D.G. and K.G. D.G. testified that the abuse occurred over a period of years, when she was between the ages of five and seven. N.T. Trial, 2/28/17, at 191. This would mean that Appellant abused the sisters from approximately 1998 until 2000. However, K.G. testified that Appellant abused them from approximately 2000 until 2001. Id. at 229. We also note that the information charged Appellant with abusing D.G. and K.G. from 2001 until 2002. Commonwealth's Information at Case One, 10/4/16, at 2. Finally, the evidence of record demonstrates that D.G. and K.G.'s then-stepfather, Mearl Clark, was present when Appellant sexually abused the sisters – and Mearl Clark pleaded guilty to sexually assaulting his stepdaughters in 2002. Id. at 254-255.

[11] "Sexual grooming is a preparatory process in which a perpetrator gradually gains a person's or organization's trust with the intent to be sexually abusive. The victim is usually a child, teen, or vulnerable adult." Daniel Pollack & Andrea MacIver, UNDERSTANDING SEXUAL GROOMING IN CHILD ABUSE CASES, 34 Child L. Prac. 161, 165 (2015).

was no identity of factual background and no series of transactions with either an immediate or remote connection; Appellant's crimes against D.G. and K.G. were completely separate and distinct from his crimes against B.M.[12]

_____

[12] The Commonwealth likens the case at bar to our opinion in Witmayer. See Commonwealth's Brief at 27-28. In Witmayer, the defendant groomed and then sexually abused the child victim in Chester County, Pennsylvania, from approximately 2006 until 2010. The victim reported the abuse to Chester County authorities in 2010; however, following an investigation, the Chester County District Attorney's Office did not charge Appellant with any crime. Witmayer, 144 A.3d at 943. "In 2012, [the victim] alerted authorities of new incidents of sexual abuse perpetrated by [the defendant] in various locations throughout Chester and Montgomery Counties." Id. at 944. The Commonwealth then charged the defendant in Montgomery County, for all of the crimes he committed against the victim. Id.

On appeal, the defendant claimed that he could not be tried in Montgomery County for the crimes he committed in Chester County. We disagreed and concluded that all of the defendant's crimes against the single victim constituted a "single criminal episode." As we explained:

> Our review of the record reveals that the crimes in question were logically and temporally related. The proof adduced at trial was that [the defendant] groomed the victim as a young child, corrupted his morals as a young teenager, and continued to seek sexual contact with him as he aged. [The defendant] engaged in a continuing course of sexual molestation, and the 2012 allegations included incidents occurring at various locations in both Chester County and Montgomery County.

Id. at 947.

Our analysis and holding in Witmayer does not alter our conclusion in the case at bar. As we explain in detail above, in contrast to Witmayer – where the defendant groomed and more or less continuously abused the same victim over a period of years in both Chester and Montgomery counties – Appellant's abuse of D.G. and K.G. in Butler County has no logical or temporal relationship with Appellant's abuse of B.M.

Therefore, the offenses charged in Case One lack a temporal and (more importantly) a logical relationship with the offenses charged in Case Two. As such, we conclude that the offenses charged in Case One and the offenses charged in Case Two do not constitute a single criminal episode. The trial court erred in concluding otherwise.

Notwithstanding this error, the Commonwealth argues that Appellant is not entitled to relief because Appellant has not shown how he was prejudiced by having Case One tried in Allegheny County. Commonwealth's Brief at 29-30. The Commonwealth, however, chose to bring Case One in Allegheny County and it therefore bore the pre-trial burden of proving that venue was proper in its chosen county. Consequently, in this criminal appeal, the Commonwealth now bears the burden of proving that the trial court's constitutional error of trying Case One in Allegheny County was harmless. See Commonwealth v. Story, 383 A.2d 155, 162 and 162 n.11 (Pa. 1978) ("the proper standard for determining whether an error involving state law is harmless is the same as the standard th[e Pennsylvania Supreme] Court applies to federal constitutional error: an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless . . . the burden of establishing that the error was harmless beyond

a reasonable doubt rests with the Commonwealth").[13]   Our Supreme Court

has held:

_____

[13] A superficial reading of Bethea and Commonwealth v. Miskovitch, 64 A.3d 672 (Pa. Super. 2013), might cause a reader to believe that the defendant has the burden of proving that an erroneous constitutional venue ruling caused him prejudice.   This is incorrect.

In Bethea, our Supreme Court dealt with the denial of an ineffective assistance of counsel claim, where the defendant claimed that "his trial counsel was ineffective in failing to challenge the venue of his trial in Franklin County for a criminal charge that arose from an incident in Cumberland County."   Bethea, 828 A.2d at 1075.   Our Supreme Court held that the defendant was not entitled to relief on his ineffective assistance of counsel claim because he failed to demonstrate "that he suffered prejudice as [a result] of trial counsel's failure to raise the question of erroneous venue."   Id. at 1076.

Bethea's holding does not shift the Commonwealth's burden in the current direct appeal.   Rather, Bethea's holding was mandated by Pennsylvania's established test for ineffective assistance of counsel claims, which requires that a defendant establish that "as a direct result of counsel's inaction, the defendant suffered prejudice, to the extent that the outcome of the proceedings would have been different absent the ineffectiveness."   Id. at 1075 (emphasis added).

Miskovitch is similarly ill-cited in the case at bar.   In Miskovitch, the defendant objected to the venue of his criminal trial.   However, the defendant only requested that the trial court "dismiss" the criminal action against him and, on appeal, the defendant argued only that he was "entitled to discharge." Appellant's Brief in Miskovitch, 852 WDA 2010, at 28-29.   In denying the defendant's claim, the Miskovitch Court cited to Pennsylvania Rule of Criminal Procedure 109, which declares:

> A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of these rules, unless the defendant raises the defect before the conclusion of the trial in a summary case or before the conclusion of the preliminary hearing in a court

> Harmless error exists if the state proves either: (1) the error did not prejudice the defendant or the prejudice was de minimis; or 2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

Commonwealth v. Bruno, 154 A.3d 764, 787 (Pa. 2017).

The Commonwealth has not borne its burden in this case, especially in light of the distinct possibility that, in filing Case One in Allegheny County, the Commonwealth was engaging in an act of impermissible forum shopping. See also Appellant's Brief at 48 (noting that, as to Case One, it "appears [the

_____

> case, and the defect is prejudicial to the rights of the defendant.

Pa.R.Crim.P. 109 (emphasis added); Miskovitch, 64 A.3d at 689.

The Miskovitch Court then utilized Rule 109 to hold that, since the defendant could not prove that any alleged procedural defect caused him prejudice, he was not entitled to discharge or dismissal. Id.

In Miskovitch, prejudice formed the dispositive inquiry because the defendant elected to pursue dismissal of his charges rather than a transfer of the criminal prosecution. However, in the case at bar, Appellant claims that the trial court erred in denying his pre-trial motion, where he objected to the venue of Case One, and Appellant claims that he is entitled to a new trial where "Case [One] is tried separately in Butler County and Case [Two] is tried separately in Allegheny County." Appellant's Brief at 71. Thus, since Appellant does not seek dismissal or discharge, neither Rule 109 nor Miskovitch shift the burden of proving harmlessness away from the Commonwealth. See Story, 383 A.2d at 162 and 162 n.11.

Commonwealth engaged in] unfair prosecutorial forum shopping, which the law requiring criminal trials to occur 'in the county in which the crime was committed' was designed to combat and prevent") (internal corrections and some internal quotations omitted).[14]

Therefore, we must reverse Appellant's convictions in Case One and remand for a new trial. With respect to Case Two (where B.M. was the victim), venue was proper in Allegheny County. Hence, we must determine whether the Commonwealth can establish, beyond a reasonable doubt, that the trial court's erroneous venue ruling with respect to Case One could not have

_____

[14] The Commonwealth claims that Appellant was not prejudiced by the trial court's erroneous venue ruling because, first, Appellant does not "challeng[e] the admission of other bad act evidence under Pa.R.E. 404(b) . . . [t]hus, had the cases involving D.G. and K.G. been tried in Butler, the jury would have heard about [Appellant's] sexual assaults . . . [against] K.B." Commonwealth's Brief at 30. Second, the Commonwealth claims, Appellant is not entitled to relief because Appellant did not "assert[] that the location of the trial made witnesses unavailable or hampered his ability to present a defense." Id.

The Commonwealth's first argument clearly fails, as the constitutional "require[ment] that a criminal defendant stand trial in the county in which the crime was committed" is concerned with far more than the admission of "prior bad acts evidence." See Gross, 101 A.3d at 32-33. Moreover, and contrary to the Commonwealth's claim, Appellant, in fact, claimed that "evidence for the offenses in Case [One] would not be admissible in Case [Two] . . . and vice versa." Appellant's Brief at 52. The Commonwealth's second argument fails because Appellant does not have the burden of establishing that he was prejudiced by the trial court's error; instead, the Commonwealth has the burden of establishing that the error was harmless. Story, 383 A.2d at 162 and 162 n.11. Further, Appellant actually claimed that the Commonwealth's erroneous choice of venue in Case One was an impermissible act of forum shopping. Appellant's Brief at 48.

contributed to the verdict in Case Two.  We conclude that the Commonwealth cannot meet this burden.

As we have already held, the Commonwealth should not have been permitted to try Case One in Allegheny County; thus, the Commonwealth could not try Case One and Case Two together, as it did, in Allegheny County. Nevertheless, the trial court and the Commonwealth seem to argue that, even if Case One's venue were improper, that error did not cause Appellant prejudice in Case Two.  According to the trial court and the Commonwealth, Appellant did not suffer prejudice in Case Two because evidence of Appellant's crimes against D.G. and K.G. would have been admissible in a separate trial for Case Two, to establish a common scheme, plan, or design.  See Commonwealth's Brief at 29; Trial Court Opinion, 10/2/17, at 19-20.  We disagree.

As Pennsylvania Rule of Evidence 404(b) provides, prior bad acts evidence, while not admissible to show mere propensity, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice."  Pa.R.E. 404(b)(2). Although not included within the enumerated list of permissible uses in Rule 404(b)(2), prior bad acts evidence may be admitted to assist in "proving the existence of a common scheme[.]"  Commonwealth v. Arrington, 86 A.3d 831, 842 (Pa. 2014).

Our Supreme Court explained:

> Evidence of other crimes is admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or to establish the identity of the person charged with the commission of the crime on trial, – in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.
>
> [The Pennsylvania Supreme] Court has often cited McCormick, Evidence, § 190 (1972 2d ed.), wherein evidence of other crimes is said to be admissible:
>
> > To prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature.
>
> [MCCORMICK'S HANDBOOK ON THE LAW OF EVIDENCE § 190 (2d ed. 1972); see] Commonwealth v. Morris, 425 A.2d [715, 720-721 (Pa. 1981)] ("[T]here must be such a high correlation in the details of the crimes that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others.").

Commonwealth v. Bryant, 530 A.2d 83, 85-86 (Pa. 1987) (internal emphasis and some internal quotations, citations, and corrections omitted); see also Commonwealth v. Hicks, 156 A.3d 1114, 1128 (Pa. 2017) (plurality) (declaring that it is not enough for the Commonwealth to present "insignificant details of crimes of the same class, where there is nothing distinctive to separate them from, for example, common street crimes").

Appellant's crimes against D.G. and K.G. would not have been admissible in a separate trial against Appellant, for his crimes against B.M., to prove a common scheme, plan, or design – the crimes are too dissimilar. To be sure:

⟩ Appellant began sexually abusing D.G. and K.G. when D.G. was as young as five and K.G. as young as four, and this abuse lasted approximately until D.G. was nine and K.G. was eight – whereas Appellant did not begin to "groom" B.M. until she was 12 years old and Appellant did not begin to physically assault B.M. until she was approximately 15 years old. See supra 19 n.10; see also N.T. Trial, 2/27/17, at 55-62 (B.M. – who was born in 1998 – testified that Appellant first touched her sexually in July 2013).

⟩ Appellant sexually abused D.G. and K.G. with the blessing of the girls' then-stepfather and only abused the girls while the stepfather was present in the house – whereas Appellant had to conceal his abuse of B.M. from her mother and he could only abuse B.M. when B.M.'s mother was not present. N.T. Trial, 2/27/17, at 65 (Appellant "always told [B.M.] he didn't want [B.M.'s] mom to know . . . [b]ecause he could get in trouble").

⟩ Appellant's access to and abuse of D.G. and K.G. occurred through the girls' then-stepfather – whereas Appellant achieved access to and began abusing B.M. through his role as B.M.'s gymnastics coach.

⟩ Appellant sexually abused D.G. and K.G. either in their house or in Appellant's house – whereas Appellant sexually abused B.M. during gymnastics classes and, later, in Appellant's vehicle. N.T. Trial, 2/27/17, at 79-80 (B.M. testified that "the first sexual contact [between her and Appellant] that did not happen at a gymnastics center t[ook] place . . . [i]n his Jeep" and that, thereafter, they would meet in a Home Depot parking lot to have sexual intercourse).

⟩ The manner in which Appellant sexually abused D.G. and K.G. was extremely unlike the manner in which Appellant sexually abused B.M.

  o D.G. testified that Appellant's sexual abuse of her and her sister occurred as follows:

> They would have us change into outfits, usually skirts, and if we would wear our underwear with them, they would tell us to take our underwear off and not to wear any underwear with the outfits. And then they would ask us to do, you know, cartwheels and act like it was a game kind of, and then they would take pictures of us and ask us to turn over and bend over and spread our legs and stuff like that for them to take pictures of us.

  N.T. Trial, 2/28/17, at 191-192.

  o As K.G. testified, Appellant took her to the basement of his house, told her to take off her underwear, and touched her

vagina with his hands and mouth. N.T. Trial, 2/28/17, at 209-212.

o Mearl Clark testified that he remembered two times where Appellant sexually abused his stepdaughters. Clark testified that, the first time, Clark allowed Appellant to "simulate sexual intercourse" with K.G.; the second time, Clark watched Appellant "fondl[e K.G.] and then place[] his penis between her legs again from behind." N.T. Trial, 2/28/17, at 261-262 and 264-265.

o Unlike Appellant's sexual abuse of D.G. and K.G., B.M. testified that Appellant began to sexually abuse her during gymnastics classes. Specifically, B.M. testified that Appellant would act as though he was helping her stretch her legs or groin; instead, using his fingers, Appellant would go underneath B.M.'s shorts and underwear and rub her vagina. N.T. Trial, 2/27/17, at 61-63; 69, and 79-80. Then, when B.M. was 16 years old, Appellant began to have sexual intercourse with her in his vehicle. Id. at 79-80.

) There is no testimony or evidence that Appellant had any contact with D.G. or K.G. outside of their family residence or the home in which Appellant lived or that Appellant attempted to cultivate a romantic relationship with the girls – whereas Appellant gave gifts to B.M., socially communicated with B.M. through text messages

and social media, coached B.M. in gymnastics, took B.M. on trips to see gymnastics meets, told B.M. "I love you;" and, acted in a way that made B.M. believe she was "in love with him like [she] thinks [she] would be in love with a boyfriend." N.T. Trial, 2/27/17, at 43-47 (concerning Appellant's social texting and social media contact with B.M.); 53 (Appellant "started sending [B.M.] pictures of his face and he would say things like, 'I love you'"); 71-76 (concerning the gifts Appellant gave to B.M.); 81 (concerning the trip Appellant and B.M. took to see a gymnastics meet).

To paraphrase the Bryant Court, the case at bar does not demonstrate "a 'common scheme' or 'such a logical connection between the [crimes at the two cases]' that one would naturally conclude that the same individual was responsible for [the crimes at the two cases]. Nor can it be said that the methods employed were 'so nearly identical,' or so 'unusual and distinctive as to be like a signature.'" Bryant, 530 A.2d at 86 (internal citations omitted). Specifically, Appellant's crimes against D.G. and K.G. lack a temporal and logical connection to his crimes against B.M.; and, the methods Appellant employed to gain access to and abuse D.G. and K.G. were quite unlike the methods Appellant utilized to gain access to, groom, and abuse B.M. Therefore, and contrary to the Commonwealth's argument on appeal, the Commonwealth would not have been permitted to introduce evidence of Appellant's crimes against D.G. and K.G. in a separate trial against Appellant,

for his crimes against B.M., under the "common scheme, plan, or design" exception.[15]

We further note that the Commonwealth's case against Appellant, for his crimes against B.M., was largely dependent upon B.M.'s testimony and, thus, B.M.'s credibility. In view of this, we are constrained to conclude that the Commonwealth has not established, beyond a reasonable doubt, that the trial court's erroneous venue ruling with respect to Case One could not have contributed to the verdict in Case Two. Therefore, we must reverse Appellant's convictions in Case Two and remand for a new trial.[16]

_____

[15] On appeal, the Commonwealth only claims that Appellant's "prior bad acts" against D.G. and K.G. would have been admissible in a separate trial against Appellant for his crimes against B.M., as they are part of a common scheme, plan, or design. As noted, the Commonwealth bears the burden of establishing that the trial court's error was harmless beyond a reasonable doubt. Therefore, we confine our analysis to the Commonwealth's stated purpose for the evidence.

[16] Further, even if evidence of Appellant's "prior bad acts" against D.G. and K.G. would have been admissible in a separate trial against Appellant for his crimes against B.M., Appellant would have been entitled to a limiting instruction in that separate case, telling the jury something like:

> This evidence must not be considered by you in any way other than for the purpose I have just stated. You must not regard this evidence as showing the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt. If you find the defendant guilty, it must be because you are convinced by the evidence that he committed the crime charged and not because you believe he is wicked or has committed other offenses.

Although we have vacated Appellant's judgment of sentence, reversed his convictions, and remanded for new trials at both cases, we must address Appellant's sufficiency of the evidence challenges. See, e.g., Commonwealth v. Markman, 916 A.2d 586, 597 (Pa. 2007) ("[e]ven where . . . a new trial is ordered, sufficiency review is necessary because a first-degree murder conviction would be precluded on remand if the evidence in the first trial was insufficient to sustain the guilty verdict"); Bullington v. Missouri, 451 U.S. 430, 442 (1981) ("[a] defendant may not be retried if he obtains a reversal of his conviction on the ground that the evidence was insufficient to convict"). Here, Appellant claims that the evidence was insufficient to support his convictions, at Case One, for endangering the welfare of children and, separately, that the Commonwealth failed to prove sexual assault by a sports official in the context of Case Two, involving the charges relating to B.M. These claims fail.

We review Appellant's sufficiency of the evidence challenges under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is

_____

Commonwealth v. Arrington, 86 A.3d 831, 845 n.11 (Pa. 2014). Appellant did not receive this limiting instruction in the case at bar, as the trial court erroneously tried Case One and Case Two together.

The absence of a limiting instruction contributes to our conclusion that the Commonwealth did not prove that the trial court's erroneous venue ruling with respect to Case One was harmless beyond a reasonable doubt as to Case Two.

sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Brown, 23 A.3d 544, 559-560 (Pa. Super. 2011) (en banc), quoting Commonwealth v. Hutchinson, 947 A.2d 800, 805-806 (Pa. Super. 2008).

First, Appellant claims that the evidence was insufficient to support his endangering the welfare of children convictions.

In Case One, Appellant was convicted of two counts of endangering the welfare of children: one for his criminal acts against D.G. and one for his criminal acts against K.G. Both convictions were under 18 Pa.C.S.A. § 4304(a)(1), which provides:

A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

- 33 -

18 Pa.C.S.A. § 4304(a)(1). The statute declares that "the term 'person supervising the welfare of a child' means a person other than a parent or guardian that provides care, education, training or control of a child." 18 Pa.C.S.A. § 4304(a)(3).

Appellant argues that the evidence was insufficient to support his convictions because "the Commonwealth failed to prove that [Appellant] was either a parent, guardian, or person supervising the welfare of the children involved." See Appellant's Brief at 28-32. This claim fails. As the trial court explained:

> [T]he evidence presented at trial established that [Appellant] was Mearl Clark's best friend and [D.G.] and [K.G] referred to him as "Uncle Keith." The girls were frequently in his company and on several occasions he was both alone with [K.G.] or sharing their care with their stepfather.
>
> Under these circumstances, it is clear that [Appellant] was supervising the welfare of [D.G.] and [K.G] for purposes of the endangering the welfare of a child statute. Although not their parent or legal guardian, [Appellant] was clearly supervising their welfare and the evidence was therefore sufficient to support the conviction[s].

Trial Court Opinion, 10/2/17, at 9-10 (some internal capitalization omitted).

We agree with the trial court. Appellant's claim to the contrary fails.[17]

_____

[17] Appellant likens the case at bar to Commonwealth v. Halye, 719 A.2d 763 (Pa. Super. 1998), where we held that the evidence was insufficient to prove that the defendant "was supervising the welfare of the child at the time of the assault." Id. at 764. However, Halye concerned a one-time visit by the defendant, with the purpose of socializing with the victim's parents, and done at a time when the child-victim's parents were at home and supervising the child. Id. As we explained:

Appellant also claims that the evidence was insufficient to support his conviction for sexual assault by a sports official against B.M. In relevant part, the Crimes Code defines sexual assault by a sports official as:

> a person who serves as a sports official in a sports program of a nonprofit association or a for-profit association commits a felony of the third degree when that person engages in sexual intercourse, deviate sexual intercourse or indecent contact with a child under 18 years of age who is participating in a sports program of the nonprofit association or for-profit association.

18 Pa.C.S.A. § 3124.3(a). The term "sports program" is defined in 42 Pa.C.S.A. § 8332.1. See 18 Pa.C.S.A. § 3124.3(c). This section declares that a "sports program" is:

> Baseball (including softball), football, basketball, soccer and any other competitive sport formally recognized as a sport by

---

> The children were playing in a bedroom while the adults were in another part of the home. At one point, [the defendant] indicated that he had to go to the bathroom. When he did not promptly return, and the children became quiet, the mother testified that she became concerned and walked back to the bedroom to check on them. Her daughter was seen sitting on the edge of the bed playing a game by herself. Upon opening a closet door, [the defendant] was discovered with his head placed near her son's exposed privates.

Id. at 765.

Obviously, Halye is materially distinct from the case at bar. Whereas Halye concerned a defendant's one-time social visit to the parents of the child-victim, the case at bar concerns an individual who was so frequently providing for the care of the child-victims that the victims referred to him as "Uncle Keith." Therefore, in contrast to Halye, the evidence was sufficient to prove that Appellant "supervis[ed] the welfare" of D.G. and K.G.

the United States Olympic Committee as specified by and under the jurisdiction of the Amateur Sports Act of 1978 (Public Law 95-606, 36 U.S.C. § 371 et seq.), the Amateur Athletic Union or the National Collegiate Athletic Association. The term shall be limited to a program or that portion of a program that is organized for recreational purposes and whose activities are substantially for such purposes and which is primarily for participants who are 18 years of age or younger or whose 19th birthday occurs during the year of participation or the competitive season, whichever is longer. There shall, however, be no age limitation for programs operated for the physically handicapped or mentally retarded.

42 Pa.C.S.A. § 8332.1(d).

According to Appellant, "the Commonwealth failed to introduce evidence that the activity for which [Appellant] coached B.M. – gymnastics – met the definition of 'sports program.'" In particular, Appellant claims, "the Commonwealth did not introduce evidence that gymnastics has been formally recognized as a sport by the United States Olympic Committee, the Amateur Athletic Union or the National Collegiate Athletic Association." Appellant's Brief at 33-34.

The record disproves Appellant's claim. Indeed, during trial, witness K.B. specifically testified that gymnastics is an Olympic sport. N.T. Trial, 2/28/17, at 234 ("So I competed at a Level 9 when I was graduating high school. Gymnastics goes from Level 1 through Level 10, and there is an elite gymnastics which is like the gymnasts you see in the Olympics") (emphasis added). Appellant's claim thus fails.

Our disposition renders Appellant's remaining claims moot. We thus vacate Appellant's judgment of sentence, reverse Appellant's convictions, and remand for new trials.

Judgment of sentence vacated. Convictions reversed. Cases remanded for new trials. Appeals at docket numbers 1590 WDA 2017 and 1591 WDA 2017 dismissed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  10/31/2018