J-S42030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
SHIDEE BEASON :
:
Appellant : No. 508 WDA 2022

Appeal from the Judgment of Sentence Entered September 28, 2021
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002816-2020

BEFORE: BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.: **FILED: FEBRUARY 28, 2023**

Appellant, Shidee Beason, appeals from the judgment of sentence entered on September 28, 2021, as made final by the denial of Appellant's post-sentence motion on April 25, 2022. We affirm.

The Commonwealth charged Appellant with numerous crimes after Appellant pulled out a gun and fired multiple shots at his neighbor and his neighbor's daughter. During Appellant's jury trial, the Commonwealth presented the following evidence.

A.K. testified that she lives in a house on East 24th Street in Erie, Pennsylvania. She testified that she sits on the front porch of her house every day and that, at the time of the shooting, Appellant was her neighbor. N.T. Trial, 6/15/21, at 20-22.

---

[*] Retired Senior Judge assigned to the Superior Court.

As A.K. testified, prior to the shooting, she did not have a good relationship with Appellant. Specifically, A.K. testified, on Labor Day in 2020, Appellant yelled at A.K. and accused her of allowing water to run off of her property and onto his. A.K. testified that, after this incident, Appellant acted in a disrespectful manner towards her. *Id.* at 22-25.

The shooting occurred at approximately 11:00 a.m. on September 14, 2020. *See id.* at 106. However, as A.K. testified, at 8:00 a.m. on September 14, 2020, Appellant walked up to her porch "with a gun on his right side" and said to her: "call your peoples now. I got my [shit] now." *Id.* at 23. A.K. testified that she called the police in response. She also testified that, when Appellant "found out [A.K.] was calling the police, . . . [Appellant] ran next door" and hid his gun. *Id.* at 64.

When the police arrived, they spoke with both A.K. and Appellant, but did not arrest Appellant. Instead, the police advised A.K. to file a private criminal complaint against Appellant. The police then left. *Id.* at 33.

A.K. testified that, later that morning, she and her daughter, L.K., were sitting on her porch when Appellant just "started shooting" at them. A.K. testified:

> [Appellant] was holding [his gun] straight forward and just went to shooting at us, shooting [at] my house, whatever he could hit and thank God, thank God he didn't hit us, but he was shooting at us, hit my daughter's car, it hit my porch, that pole right there two times, the bullet went in between the concrete of my steps down below. He was trying to hurt us – kill us.

- 2 -

*Id.* at 40.

A.K. testified that she heard Appellant fire "[a]bout four or five" times. *Id.* at 42. She testified that, after the shooting stopped, Appellant ran away and the police arrived. *Id.* at 95. Officer Cody Reichart of the Erie Police Department responded to the scene and helped preserve evidence. As Officer Reichart testified, the police recovered four fired cartridge casings, which were located in an area that had a "sightline . . . to the front of the porch where the [victims] were sitting and the vehicle that was struck." *Id.* at 111. Officer Reichart testified that the police also documented two bullet holes in A.K.'s house and "one bullet hole [] in the car that was parked in the driveway directly next to the porch." *Id.* at 107.

Corporal Dale Wimer of the Pennsylvania State Police testified as an expert in the field of firearms and tool mark examination. N.T. Trial, 6/16/21, at 36. Corporal Wimer testified that he examined the four fired cartridge casings that were recovered in this case. He testified that all four casings housed a .40 caliber bullet and that all four casings were ejected from the same gun. *Id.* at 42-49.

Appellant was arrested on September 15, 2020. N.T. Trial, 6/16/21, at 21. Following trial, the jury found Appellant guilty of two counts of attempted homicide, two counts of aggravated assault (attempt to cause serious bodily injury), two counts of aggravated assault (attempt to cause bodily injury with a deadly weapon), two counts of recklessly endangering another person, possession of a firearm by a prohibited person, firearms not to be carried

without a license, and discharge of a firearm into an occupied structure.[1]  On September 28, 2021, the trial court sentenced Appellant to serve an aggregate term of 15 to 30 years in prison for his convictions.  N.T. Sentencing, 9/28/21, at 13-14.

After the trial court denied Appellant's post-sentence motion, Appellant filed a timely notice of appeal.  Appellant raises two issues on appeal:

> [1.] The Commonwealth did not provide sufficient evidence [] to support the charges for which [Appellant] was found guilty.
>
> [2.] The [trial] court's sentence constituted an abuse of discretion in its length and did not take into account the young age of [Appellant] and the possible rehabilitation of [Appellant].

Appellant's Brief at 2.

Appellant's first claim on appeal contests the evidentiary sufficiency of his convictions.  We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be

---

[1] 18 Pa.C.S.A. §§ 901(a), 2702(a)(1), 2702(a)(4), 2705, 6105(a)(1), 6106(a)(1), and 2707.1(a), respectively.

resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Callen*, 198 A.3d 1149, 1167 (Pa. Super. 2018) (citations and quotation marks omitted).

Appellant claims that the evidence was insufficient to support his convictions for attempted homicide, aggravated assault, and possession of a firearm without a license because there was no evidence that Appellant either possessed or fired the firearm. *See* Appellant's Brief at 11-13.[2] This claim fails.

_____

[2] Appellant preserved this issue in his Pennsylvania Rule of Appellate Procedure 1925(b) statement, where he raised the following claim:

The [trial] court erred in failing to find that the Commonwealth did not provide sufficient evidence to the finder of fact to support the finding of guilt on two counts of attempted homicide, four aggravated assault, two firearms counts, one count of firing into an occupied structure and two counts of reckless endangerment, where the victim testimony was completely inconsistent with the video footage presented to the jury as well as prior statements they [] made to police, the video footage failed to establish that Appellant had possessed and/or fired a firearm, and no firearm was ever recovered by police.

Appellant's Rule 1925(b) Statement, 5/6/22, at 1 (some capitalization omitted).

Viewing the evidence in the light most favorable to the Commonwealth, the evidence was clearly sufficient to prove that Appellant fired a gun at A.K. and her daughter, L.K. Certainly, A.K. testified that she saw Appellant open fire at her and her daughter. She testified:

Q: And as you're experiencing it on September 14th of 2020, are you able to see [Appellant] in his entirety?

A: Yes.

Q: Anything to obstruct your visibility of [Appellant] from where you're seated on your porch?

A: No, I can see everything about him.

. . .

A: I watched him with . . . my own two eyes walk down the street away from us.

Q: You were watching him the entire time?

A: The whole entire time I was watching him. All my surroundings I was watching. I was watching him.

. . .

A: . . . My attention when I – when he went to shooting, I was just looking at him like – like somebody just kept me there to just watch him shoot me. I was just looking at him dead – looking at him and watching the fire come out the gun.

. . .

A: [Appellant] was holding [his gun] straight forward and just went to shooting at us, shooting [at] my house, whatever he could hit and thank God, thank God he didn't hit us, but he was shooting at us, hit my daughter's car, it hit my porch, that pole right there two times, the bullet went in between

the concrete of my steps down below.  He was trying to hurt us – kill us.

N.T. Trial, 6/15/21, at 40 and 91-95.

A.K.'s testimony was corroborated by the testimony of L.K., who told the jury:

A: I seen [Appellant] at the bushes with a gun in his hand in the middle of the sidewalk.

. . .

Q: Did you see him pull [the gun] from that bag?

A: Yes.

Q: And does he raise his arm immediately?

A: Yes after he . . . grabbed it out of the bookbag and pointed it directly straight.

Q: And from the moment that the firearm is raised, how quickly are you able to hear gunshots?

A: Probably after like the second shot I realized like, I heard it.

. . .

Q: . . . [How] did you [know] you were being shot at?

. . .

A: Because I was looking straight ahead and I [saw Appellant] with the gun shooting towards me and he was pointing the gun straight at me.

Q: And what was going on through your mind at that point in time?

A: He's really trying to kill us.

*Id.* at 156-160.

Further, the police observed two bullet holes in A.K.'s house and "one bullet hole [] in the car that was parked in the driveway directly next to the porch." *Id.* at 107. The police also discovered four fired cartridge casings in an area that had a "sightline . . . to the front of the porch where the [victims] were sitting and the vehicle that was struck." *Id.* at 111. Finally, the Commonwealth's expert testified that the four fired cartridge casings all housed .40 caliber bullets and all four casings were ejected from the same gun. N.T. Trial, 6/16/21, at 42-49.

Viewing this evidence in the light most favorable to the Commonwealth as the verdict winner, the evidence is sufficient to prove that, on September 14, 2020, Appellant fired a gun at A.K. and L.K. Thus, Appellant's first claim on appeal fails.

Next, Appellant claims that the trial court abused its discretion by sentencing him to an excessive term of incarceration that "did not take into account the young age of [Appellant] and [his] possible rehabilitation." Appellant's Brief at 14. Appellant's claim on appeal challenges the discretionary aspects of his sentence. "[S]entencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion." *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa. Super. 2001).

Pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b).

Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. ***Id.***

As this Court explained:

> [t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [42 Pa.C.S.A.] § 9781(b).

***Commonwealth v. Cook***, 941 A.2d 7, 11 (Pa. Super. 2007).

Here, Appellant filed a timely post-sentence motion and notice of appeal. Further, Appellant's post-sentence motion claimed that his sentence is excessive because the trial court failed to consider Appellant's youth and rehabilitative needs. ***See*** Appellant's Post-Sentence Motion, 10/4/21, at 2-3.[3] Thus, Appellant preserved his current appellate claim.[4] We will now determine

---

[3] Further, Appellant raised and preserved this claim in his Rule 1925(b) statement. ***See*** Appellant's Rule 1925(b) Statement, 5/6/22, at 1.

[4] While Appellant's brief does not include the requisite Rule 2119(f) statement, the Commonwealth has not objected to this failure. As such, we will "ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate" under the Sentencing Code. ***See***, ***e.g.***, ***Commonwealth v. Kiesel***, 854 A.2d 530, 533 (Pa. Super. 2004) ("when the appellant has not included a Rule 2119(f) statement and the appellee has not objected, this Court may ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate, or enforce the requirements of Pa.R.A.P. 2119(f) *sua sponte*, *i.e.*, deny allowance of appeal").

whether Appellant's claim presents a "substantial question that the sentence appealed from is not appropriate under the Sentencing Code." **Cook**, 941 A.2d at 11.

Generally, to raise a substantial question, an appellant must "advance a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. McKiel**, 629 A.2d 1012, 1013 (Pa. Super. 1993); **Commonwealth v. Goggins**, 748 A.2d 721, 726 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000). Additionally, in determining whether an appellant has raised a substantial question, we must limit our review to Appellant's Rule 2119(f) statement. **Goggins**, 748 A.2d at 726. This limitation ensures that our inquiry remains "focus[ed] on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." **Id.** at 727 (emphasis omitted).

Appellant contends that his sentence is excessive because the trial court failed to consider his rehabilitative needs, including the fact that he "is a very young man and is amenable to a period of rehabilitation substantially shorter than the period he was sentenced by the [trial court]." **See** Appellant's Brief at 8; Appellant's Post-Sentence Motion, 10/4/21, at 2-3. This claim presents a substantial question, thus permitting our review of the claims. **See Commonwealth v. Derry**, 150 A.3d 987, 992 (Pa. Super. 2016) (substantial question raised where appellant claimed the court "failed to consider relevant

sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of [a]ppellant, as 42 Pa.C.S.[A.] § 9721(b) requires") (citation omitted).

On appeal, Appellant argues that the trial court failed to consider his rehabilitative needs, including the fact that he "is a very young man and is amenable to a period of rehabilitation substantially shorter than the period he was sentenced by the [trial court]." **See** Appellant's Brief at 8; Appellant's Post-Sentence Motion, 10/4/21, at 2-3. This claim immediately fails because, during sentencing, the trial court relied upon a presentence investigation report. **See** N.T. Sentencing, 9/28/21, at 13. As such, we presume that the trial court was aware of the mitigating factors Appellant currently points to on appeal. **See**, **e.g.**, **Commonwealth v. Baker**, 72 A.3d 652, 663 ("[w]hen a sentencing court has reviewed a presentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence"). Appellant's claim on appeal thus fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2023

- 11 -