**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EBBIN TRAMANE DEVOSE | : | |
| | : | |
| Appellant | : | No. 727 MDA 2022 |

Appeal  From the Judgment of Sentence Entered April 29, 2020
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0002334-2019

BEFORE:  PANELLA, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY OLSON, J.:                        **FILED: MARCH 28, 2023**

Appellant, Ebbin Tramane Devose, appeals from the judgment of sentence entered on April 29, 2020.  We affirm.

The trial court thoroughly summarized the underlying facts of this case:

> The Commonwealth presented the testimony of Trooper Michael Wienckoski (Trooper).  The witness testified he was employed by the Pennsylvania State Police (PSP) in the vice/narcotics unit at Troop P in Wyoming. He has been employed in this capacity since 2017. In his current role, he testified he is engaged in drug investigations. Notably, the Trooper underwent training with the PSP, Pennsylvania Narcotics Association, and Bureau of Criminal Investigation. At the time of his testimony the Trooper stated he participated in nearly 500 drug investigations.
>
> On June 21, 2019, the Trooper was engaged in this drug investigation accomplished through a controlled buy, which culminated in the arrest of [Appellant]. The Trooper provided background information as it related to the use of the confidential informant[] (CI) to contact [Appellant] herein. The CI's role involved setting up a controlled purchase of heroin on the date in question. The Trooper identified the CI

in this case as Shawn Parker (Parker). Parker made a telephone call in the Trooper's presence and spoke to an individual known to Parker as "T" (hereinafter identified as [Appellant]). Parker and T agreed to meet in a location in the city of Wilkes-Barre more commonly known as "Save-A-Lot."

The Trooper specifically testified to searching both Parker and his paramour for money, drugs or any type of contraband prior to the controlled purchase. . . . The Trooper also testified that a search of Parker's motor vehicle, a four-door white Lincoln Continental, was completed prior to the controlled buy. The Trooper verified Parker, his paramour, and the vehicle did not contain contraband or money. Thereafter, Parker was provided recorded money from a PSP account in order to purchase the drugs. The Trooper stated the money was photocopied prior thereto to record the serial numbers. Commonwealth Exhibit No. 1 was identified as the document containing a photocopy of five $20 bills utilized to purchase the narcotics.

The Trooper's testimony reflects Parker was under constant surveillance by him and/or other law enforcement officers throughout the transaction. [Appellant] was observed in the area of the Save-A-Lot as agreed to in the telephone call Parker made in the presence of the Trooper. At this location, [Appellant] was observed entering the back seat of Parker's vehicle. [Appellant] was identified in court by the Trooper at the time of his testimony. Parker and [Appellant] drove to an area identified as Metcalf and Hudson Streets in Wilkes-Barre [] - approximately a quarter to one-half of a mile from the Save-A-Lot location. [Appellant] was observed exiting the vehicle at this location and, after a brief period, [Appellant] returned and re-entered the vehicle. The record reflects law enforcement did not observe any other individual[s] approached Parker's vehicle on the date, time and location of the transaction. Shortly thereafter, the vehicle seizure was initiated and [Appellant] was arrested.

A search of Parker's vehicle after the seizure resulted in the discovery of the contraband in the center console. Commonwealth Exhibit No. 2 was identified as the packets of purported heroin - later by testing determined to be fentanyl as set forth in the stipulation entered of record. The Trooper testified the packaging was typical for heroin and/or fentanyl.

In addition, two cell phones were recovered on the person of [Appellant]. Notably, the recorded buy money was not found, nor any other contraband.

The Trooper verified Parker was compensated for his work as a CI in the amount of $280. The funds were obtained from the PSP confidential informant account.

Parker testified for the Commonwealth and stated he was 55 years of age and originally from Reading but then resid[ed in Wilkes-Barre]. He acknowledged working as a CI for the PSP on the date in question. Additionally, he corroborated his role in making a drug purchase from [Appellant], known to him as "T". Parker testified he and his paramour, Jessica Brew (Brew), met [Appellant] at a time prior to this incident at a location near a [Wilkes-Barre] business establishment known as Crown Chicken. Apparently, [Appellant] provided a telephone number to Brew so they could contact him.

Parker, consistent with the Trooper, testified he contacted [Appellant] on the date of the controlled buy and told him he was looking to purchase rock cocaine. Thereafter, he stated the substance was heroin. Parker identified [Appellant] in court at the time of his testimony. He stated he picked [Appellant] up at Save-A-Lot, talked about what he wanted to buy, and thereafter gave him a ride to obtain the drugs. Parker testified he gave [Appellant] the recorded money and that [Appellant] obtained the drugs and handed them to Brew. He stated Brew put the drugs in an ashtray. Parker testified [Appellant] spoke to an unidentified individual prior to returning to the vehicle with the contraband.

Parker testified that he, Brew and the vehicle were searched prior to the controlled buy. Parker also identified Commonwealth Exhibit No. 2 as the contraband purchased on the date in question and he further testified to receiving a cash payment for his participation in the controlled purchase.

Cross-examination revealed Parker was scheduled to be in Reading on the 12th of March to answer for what he described as a retail theft charge. Reference was also made to a case pending in Schuylkill County from 2018, which Parker stated was dismissed. Cross-examination also revealed the ashtray where Brew placed the drugs was in fact located in the

console of the vehicle where the Trooper stated [the] drugs were found.

Parker's paramour, Jessica Brew, testified she was [30] years of age and from [Wilkes-Barre]. On or about June 21, 2019, she acknowledged being with Parker at the time of the controlled buy. Brew corroborated the fact that the police searched them and the vehicle before the controlled buy.

Brew testified Parker made the call to the individual then known and referred to as "T". She corroborated the historical events insofar as [Appellant] approached her previously while Parker was purchasing a pack of cigarettes in a store located next to Crown Chicken to inquire as to whether she needed anything, noting he could obtain it. At that point, [Appellant] provided a telephone number. Brew identified [Appellant] in court at trial. Brew verified they went to the area of Hudson Street to obtain the drugs. Brew testified [Appellant] got out of the vehicle in that location and went into a house. When he returned to the vehicle, he provided the contraband to her. Brew stated she thought the contraband was heroin but later learned it was fentanyl. She identified the packets of contraband at trial. Brew acknowledged working for the police due to criminal charges in Berks County.

On cross-examination, Brew stated she didn't know exactly what house [Appellant] went into but recalled it was located on Hudson Street. She testified she could identify the house at the location because she watched him. Brew testified there was a black individual on the porch known as "Taz." Re-direct examination revealed Brew, upon initially meeting [Appellant] prior to this transaction, was asked by him if she needed crack, dope or anything.

The next witness was Sergeant Joe Sinavage (Sergeant) who testified he was employed by the [Wilkes-Barre] Police Department for 13 years. Prior to that he was in the military and received training in narcotics and detainee transfer. Sergeant's testimony reveals he is a certified expert with the Luzerne County District Attorney's office and has participated in no fewer than 100 narcotics arrests. On June 21, 2019, he was assisting the PSP in a buy-bust operation. Upon completion of the surveilled transaction, he initiated the vehicle seizure. He corroborated the location in the area of

Hudson Street. The Lincoln Town car operated by Parker was stopped on Park Avenue, south of Lehigh Street in [Wilkes-Barre] after the controlled buy. The occupants were taken into custody at that point. Sergeant identified [Appellant] in court at the time of his testimony.

The Commonwealth rested and [Appellant] testified on his own behalf. He is 38 years old and resides . . . in the city of [Wilkes-Barre,] although he occasionally stays with his wife. . . . [Appellant declared] that June 21, 2019, was a Friday and an obligatory prayer day for his Muslim faith. He stated the location for prayer is on the corner of Academy and Franklin Streets in [Wilkes-Barre].

[Appellant] testified he spoke to Parker in the morning prior to prayer. He agreed Parker referred to him as "T". [Appellant] testified Parker contacted him for the purpose of procuring [marijuana], noting he and Parker would smoke weed together. [Appellant] acknowledged he went to the Save-A-Lot about 2 p.m.; however, he maintained the trip was to procure corned beef hash for breakfast at his wife's behest. He was unable to obtain corned beef hash at the Save-A-Lot. While the record of his testimony is somewhat convoluted, [Appellant] nonetheless agreed he met Parker and Brew at the Save-A-Lot location.

[Appellant's] testimony demonstrates he entered the rear seat of Parker's vehicle at the Save-A-Lot. He contends he sought a ride to another supermarket in the city of [Wilkes-Barre] identified as Shield's or, in the alternative, a ride to his wife's residence. He also acknowledged Brew was in the right front passenger seat and Parker was driving. [Appellant] denied the history of meeting Brew prior in time and the offer to sell her drugs. Notwithstanding, he acknowledged he was with Parker and Brew at the relevant time and that he, Parker and Brew traveled to Metcalf and Hudson Streets in [Wilkes-Barre].

[Appellant] testified he was in possession of two cell phones on the day of his arrest. The items were identified and admitted as Commonwealth Exhibit No. 4. [Appellant] identified one cell phone obtained through public assistance . . . and he stated the phone worked well. Notwithstanding, [Appellant] testified he and his wife went half on the cost of

an additional phone[]. The record reflects [Appellant] acknowledged the calls placed to him by Parker on the date in question were indeed to one of the phones in his possession.

[Appellant] testified he attempted to call an individual identified as "Fat Boy" at Parker's request. [Appellant] testified he knows the individual as "Dutch." [Appellant] agreed he is familiar with individuals identified by Brew, to include Taz, who he acknowledged purchasing weed from and an individual by the name of " Grip." [Appellant] testified Grip and Taz are allegedly uncle and nephew and a source of weed for him. Coincidentally, [Appellant] testified Taz apparently lived on the corner of Metcalf and Hudson.

On the day in question, [Appellant] testified he attempted to reach Fat Boy a/k/a Dutch at the behest of Parker. [Appellant] stated he told the individual via text that Parker wanted two little eighths of weed and [Appellant] further stated the individual indicated he would come over in five minutes. [Appellant] testified this individual came to the vehicle and passed "whatever" to Parker and Parker passed it off to Brew.

Notably, [Appellant] acknowledged getting out of the Lincoln at the Metcalf and Hudson location consistent with the witness testimony for the Commonwealth. However, [Appellant] testified he simply yelled to Taz through the window of the house, but stated the house was empty so he returned to Parker's car. While [Appellant] acknowledged speaking to someone while out of the car at Metcalf and Hudson, he stated it was just an individual walking by and he simply acknowledged him by saying "Hey".

[Appellant] denied any knowledge of what Fat Boy a/k/a Dutch handed to Parker. [Appellant] testified that after Parker received the item from Fat Boy he gave it to Brew and she placed it in her waistband. [Appellant] also specifically denied handing fentanyl to Brew and he denied receiving money from Parker. [Appellant] testified he had $123 on him at the time he was taken into custody; however, he was not found in possession of the recorded buy money or contraband.

[Appellant] testified police stopped Parker after the transaction and removed them from the car. He stated he observed Brew reach inside her pants and give the contraband to police. [Appellant] testified no contraband was found by police inside the car.

At the conclusion of the first day of trial, [Appellant] consented to the extraction of a text exchange from his cell phone (notably, this was done with his assistance). He thereafter identified Joint Exhibit No. 1, and acknowledged that "OG FRN SM" reflects the designated name for Parker in the cell phone. The images of the text messages authenticated by [Appellant] corroborate the fact that Parker contacted [Appellant] and stated his desire to obtain two "bundles" as well as weed. [Appellant] communicated he was going to prayer and he would call Parker when done. The exchange thereafter demonstrates that, when asked by Parker when [Appellant] would be out of his prayer, [Appellant] replied, "I'm out" and texted, "Save-A-Lot", to which Parker replied, "On my way". [Appellant] initially contended that when Parker requested dog food he was referring to weed. [When] questioned as to a portion of the text message wherein Parker requested two "bundles," [Appellant] testified he believed Parker wanted heroin. [Appellant] also defined "hard" to mean crack. [Appellant] understood Parker to have a need for the hard or crack because he had some sales.

The aforementioned text exchange corroborates the Trooper's testimony as it relates to the communication to set up the controlled buy. Notwithstanding [Appellant's] testimony that he believed he was only assisting Parker in obtaining weed, the record demonstrates [Appellant] understood dog food and the reference to two bundles to mean heroin.

The Trooper was recalled by the Commonwealth and identified "Fat Boy" as Tahji Swinney. He stated there are open investigations related to Fat Boy and active warrants for his arrest. The Trooper's testimony reflects they utilized Parker and Brew to make controlled buys from Fat Boy. The Trooper stated Parker and Brew completed approximately 50 buys from Fat Boy in the two to three months prior to June 21, 2019.

> The Trooper testified that the telephone number found in [Appellant's] phone, . . . was the telephone number belonging to Parker. The Trooper confirmed that "dog food" – or for that matter anything that starts with the letter D — relates to a request for dope which is heroin or fentanyl. The Trooper stated he never heard "D" or "dog food" used to refer to marijuana.
>
> On cross-examination, the Trooper testified he did not see Fat Boy at the location of Hudson and Metcalf on the day of this controlled buy.

Trial Court Opinion, 8/19/22, at 2-10 (footnotes and citations omitted).

Following trial, the jury found Appellant guilty of two counts of possession of a controlled substance with the intent to deliver ("PWID") and one count each of possession of a controlled substance, possession of drug paraphernalia, and criminal use of a communication facility.[1] On April 29, 2020, the trial court sentenced Appellant to serve an aggregate term of five to ten years in prison for his convictions. Following the *nunc pro tunc* reinstatement of Appellant's direct appellate rights, Appellant filed a timely notice of appeal. Appellant raises one claim to this Court:

> Whether the Commonwealth failed to prove by sufficient evidence that [] Appellant was guilty of the crimes charged[?]

Appellant's Brief at 1.

We review Appellant's sufficiency of the evidence challenge under the following standard:

---

[1] 35 P.S. § 780-113(a)(30), (16), and (32) and 18 Pa.C.S.A. § 7512(a), respectively.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Callen*, 198 A.3d 1149, 1167 (Pa. Super. 2018) (citations and quotation marks omitted).

Appellant claims that the evidence was insufficient to support his convictions because: "there is no proof that the confidential informants, Shawn Parker [] or Jessica Brew [], were ever searched prior to the incident, or that even the vehicle was searched;" "the $100 pre-recorded buy money was never found on [Appellant] or in the subject vehicle;" "the only drugs found were located in the center console where both the confidential informant and his girlfriend were located, and that [Appellant] was in the back seat;" and, "both Parker and Brew were looking to seek consideration for pending criminal charges in exchange for cooperation in this matter thus severely challenging their credibility." Appellant's Brief at 9.

Appellant's specific claims on appeal fail, as they challenge the weight, not the sufficiency, of the evidence. *See*, *e.g.*, *Commonwealth v. Widmer*, 744 A.2d 745, 751-752 (Pa. 2000) (explaining the differences between a weight and a sufficiency of the evidence challenge). Further, Appellant's general claim that the evidence was insufficient to support his PWID conviction fails because, viewing the evidence in the light most favorable to the Commonwealth, the evidence is sufficient to support the jury's determination that Appellant sold Parker and Brew fentanyl. To be sure, both Parker and Brew testified that, on the day in question, Appellant sold them the fentanyl. *See*, *e.g.*, N.T. Jury Trial, 3/10/20, at 113 (Parker testified: "[Appellant and I] talked about what I wanted to buy. And he said, okay. I had to give him a ride over to get it. He went and got it – I gave him the money. He went and got it, came back, gave the drugs to [Brew]; and she put it in the ashtray"); and 137 (Brew testified: "[Appellant] got out [of the car]. He went into the house. [Parker] gave him the money. When [Appellant] came back to the car, he gave [the drugs] to me. I put it in the ashtray"). Appellant's claim on appeal thus fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/28/2023</u>