J-A02009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON ERNEST JOHNSON | : | |
| | : | |
| Appellant | : | No. 67 WDA 2022 |

Appeal from the Judgment of Sentence Entered August 26, 2020
In the Court of Common Pleas of Clarion County Criminal Division at
No(s):  CP-16-CR-0000168-2019

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON ERNEST JOHNSON | : | |
| | : | |
| Appellant | : | No. 68 WDA 2022 |

Appeal from the Judgment of Sentence Entered August 26, 2020
In the Court of Common Pleas of Clarion County Criminal Division at
No(s):  CP-16-CR-0000169-2019

BEFORE:  BOWES, J., MURRAY, J., and PELLEGRINI, J.[*]

CONCURRING AND DISSENTING MEMORANDUM BY PELLEGRINI, J.:

**FILED: JUNE 6, 2023**

While I otherwise join the majority in its resolution of the other claims

raised in this appeal, I respectfully dissent from the majority's holding that

_____

[*] Retired Senior Judge assigned to the Superior Court.

venue was proper in Clarion County for Case 169-2019 when all the events upon which it was based took place in Allegheny County.

The case had its origins in the November 20, 2018 death of William Stout in Clarion County from a drug overdose. Stout had purchased drugs from Spencer Rudolph, a co-worker in Clarion County, who, in turn, purchased the drugs from Joseph Hoffman in Jefferson County. Hoffman had, in turn, obtained those drugs from William Fourness in Elk County. Fourness had obtained the drugs either personally or with others who acted on his behalf in Monroeville, which is outside Pittsburgh in Allegheny County. Charges were filed against Johnson for the conduct that resulted in Stout's death at Clarion County Case 168-2019.

Johnson's business relationships in Clarion County had ended by February 2019 but he continued his drug-dealing activity in Allegheny County, which are the basis for the charges filed at Case 169-2019 for offenses that occurred from March 9, 2019, to March 12, 2019. Johnson claimed that venue on this case was improper in Clarion County because those charges were not part of the same criminal episode involved in Case 168-2019.

Johnson argues that there was no single criminal episode because no witness or co-conspirator in Case 168-2019 had any involvement with the criminal activity alleged in Case 169-2019. Further, he contends there was no temporal relationship between the cases because the allegations in Case 168-2019 primarily occurred in November 2018 and ended on or before

February 2019, while the activity at issue in Case 169-2019 did not occur until March 2019. The majority dismisses these arguments, reasoning that because Johnson operated a continuous drug distribution in Allegheny County, even after his association with Fourness ended, he continued to sell the same drugs using the same packaging from the same location in the following weeks. Thus, it concludes that the March 2019 deliveries were not a second, different criminal episode but a continuation of what Johnson had been doing all along.

I disagree with the majority that this continued criminal **enterprise** represented the same criminal **episode**, as contemplated by our law governing venue. Because the charges at Case 169-2019 arose out of a drug-dealing operation located exclusively in Allegheny County from March 9, 2019, to March 12, 2019, I would hold that the trial court erred in denying Johnson's motion to dismiss for lack of venue.

## I.

The requirement that a defendant be tried in the locality where the crime took place is rooted in the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. ***Commonwealth v. Callen***, 198 A.3d 1149, 1157 (Pa. Super. 2018) (citation omitted). The venue requirement "provides a number of protections to the defendant, including protecting the defendant from prosecutorial forum shopping (as to both judges and juries) and providing the defendant with the convenience of having relevant evidence and witnesses more readily accessible." ***Id.*** at 1158. Thus,

as the majority explains, "'a condition precedent to the exercise by a single county to jurisdiction in a case involving multiple offenses in various counties is [that] the offense must constitute a single criminal episode.'" Majority Memorandum at 24 (alterations in original) (quoting *Commonwealth v. Witmayer*, 144 A.3d 939, 946 (Pa. Super. 2016)); *see also* Pa. R. Crim. P. 130(A)(3).

To determine whether multiple crimes are part of a single criminal episode, we look to whether they are "logically or temporally related and share common issues of law and fact." *Callen*, *supra* at 1160 (quoting *Witmayer*, *supra*, at 946-47). In addressing this question, we look to whether there is "substantial duplication" of the factual and legal issues presented by the offenses, though the factual backgrounds of the cases do not need to be wholly identical. *Id.* Offenses may constitute a single criminal episode even when the offenses represent multiple occurrences over a period of time, as long as there is a logical relationship between the offenses. *Id.* Finally, in conspiracy cases, the Commonwealth may bring charges in any county in which the conspiracy was formed or an overt act in furtherance of the conspiracy was committed. *Commonwealth v. Gross*, 110 A.3d 28, 34 (Pa. 2014).

My review of the record in this case reveals that all crimes that were committed in Clarion County, and any conspiracy to commit further crimes there, were complete by February 2019 at the latest. At the evidentiary hearing on Johnson's motion, the Commonwealth relied on the preliminary

hearing transcript for its argument that venue for both cases was proper in Clarion County. N.T., 8/12/19, at 9. At the preliminary hearing, the Commonwealth's only witness, Chief William H. Peck of the Clarion Police Department, admitted that the criminal conspiracy and corrupt organization involved in Case 168-2019 was "pretty much over with" by February 2019, since almost all of its participants were in jail by that time. N.T., 4/9/19, at 56-57.

Just because Chief Peck's investigation into Stout's death in Clarion County eventually led to Johnson's arrest in Allegheny County does not necessarily compel the conclusion that the arrest and search were part of the same criminal episode as Stout's death. We recently acknowledged as much in **Commonwealth v. Copes**, ___ A.3d ___, 1275 EDA 2022 (Pa. Super. May 26, 2023), a case involving compulsory joinder.[1] There, the defendant assaulted the victim near a SEPTA station and fled the scene. After reviewing surveillance footage, police officers recognized the defendant about an hour later and approached him to effectuate an arrest. **Id.** at *2. As they approached, the defendant discarded a backpack containing a firearm. As a

---

[1] The "single criminal episode test" that we rely upon in assessing venue claims "originates from Pennsylvania's compulsory joinder statute." **Commonwealth v. Callen**, 198 A.3d 1149, 1160 (Pa. Super. 2018) (citation omitted).

result, he was charged at separate dockets: one docket for the assault charge and one for charges related to his illegal possession of a firearm. *Id.*

We concluded that the dockets did not arise out of a single criminal episode, so compulsory joinder was not required. Even though *a mere hour* passed between the two crimes, and the first crime undoubtedly precipitated the arrest that uncovered the firearms offense, we found that there was no logical relationship between the two crimes or substantial duplication of facts that would compel joinder. *Id.* at *6. The victim in the assault case would not be a witness to the firearms offense, and the officers who arrested the defendant did not witness the assault. *Id.* The surveillance footage of the assault had no relevance to the firearms offense. *Id.* Even though it was an investigation of the assault that led to the firearms charge, we concluded that "any duplication of evidence would be *de minimus* and inadequate to establish the charges were logically related." *Id.* at *6-7.

## II.

The same logic applies here. Chief Peck's investigation into Stout's death and Johnson's trafficking of heroin in Clarion County ultimately culminated in a search of Johnson's base of operations in Allegheny County. That is where the overlap between the two cases ends. As the majority acknowledges, Johnson's business relationships in Clarion County had been severed by February 2019, though he apparently continued his drug dealing activity thereafter in Allegheny County. In investigating Johnson's activities

at 331 Noel Drive in March 2019, Chief Peck coordinated with the Monroeville Police Department to conduct surveillance, examine the home's curbside trash, and recover a stamp bag of suspected narcotics from a third party's vehicle leaving the residence. They eventually stopped Johnson while he was leaving the residence in a car driven by Timothy Smith, who had just purchased narcotics from Johnson. After the arrest, law enforcement spoke with Johnson's girlfriend, Wakita Owens, to learn more about Johnson's dealings with Fourness.

Nothing in the record suggests that Smith, Owens or the Monroeville Police Department were involved in the drug-dealing activities or investigation in Clarion County or that their testimony would be relevant in the case involving Stout's death. Nor did any of the essential witnesses to the Clarion County case—including Fourness, Gleixner and Hoffman—offer testimony that was required to prosecute the Allegheny County charges. There is no *substantial* duplication of facts and law between the two cases; any connection between the two, such as Chief Peck initiating further investigation by the Monroeville Police Department, is of the *de minimus* nature that we found insufficient to compel joinder in **Copes**. Even the transcript of the trial confirms this conclusion, as there is a clear demarcation between the witnesses and evidence presented in support of both cases.

Put simply, the evidence presented establishes that Johnson continued to deal drugs after his connection with Fourness into the Clarion County

market had evaporated. That he continued this enterprise in Allegheny County after his co-defendants were arrested in Clarion County does not establish that a single criminal episode connects both cases. Under the majority's analysis, a drug dealer who makes a sale in one county can be prosecuted in that county for all of his future dealings, merely because he continues to engage in the same type of criminal activity. I would not hold that the federal or state constitutions or our rules of procedure governing venue allow such a broad result.

Finally, unlike the majority, I would not conclude beyond a reasonable doubt that the error is harmless. First, the majority points out that Johnson did not challenge the ruling on the Commonwealth's joinder motion and asserts that it finds no error in the trial court's ruling joining the two cases for trial. Majority Memorandum at 26 n.14. As we explained in *Callen*:

> Simply stated, our permissive joinder rules do not override the constitutional requirement that "the accused hath a right to ... a speedy public trial by an impartial jury of the vicinage" or its corollary that "[v]enue in a criminal action properly belongs in the place where the crime occurred." **To be sure, our venue rules are far more narrow than our permissive joinder rules**. Thus, where Pennsylvania Rule of Criminal Procedure 582 permits offenses in separate informations to be tried together if "the evidence of each of the offenses would be admissible in a separate trial for the other," our venue rules borrow the language of our compulsory joinder statute – and only allow an offense to be tried in a foreign judicial district if it is part of a "single criminal episode" as an offense that occurred within the district. **Hence, in cases where our venue and permissive joinder rules are in irreconcilable conflict, the more specific venue rules control over the more general permissive joinder rule**.

*Callen*, *supra*, at 1160 (citations omitted; emphasis added). Accordingly, I do not find the trial court's ruling on a permissive joinder motion to be relevant or dispositive to a venue or harmless error analysis.[2]

Second, I attach no significance to there being no evidence of the Commonwealth engaging in impermissible forum shopping in having both cases tried in Clarion County. Majority Memorandum at 26-27 n.14. While evidence of forum shopping would likely always weigh against finding harmless error, I do not believe that the absence of such evidence should affect our analysis of whether an error—especially one of a constitutional nature like venue—was harmless. To that end, as I do not believe that

---

[2] Indeed, the trial court seems to have recognized in its opinion on the permissive joinder motion that Johnson's criminal enterprise in Clarion County had ceased well before his arrest in Allegheny County:

> In the present case No. 169, numerous charges are based on alleged possession and deliveries by the Defendant of the same type of drugs, heroin and fentanyl, in the same area, Monroeville, Allegheny County, during the period from March 9, 2019 to March 12, 2019. The police obtained this information in connection with the investigation into the death of [Stout]. The evidence may show that the Defendant was involved in a conspiracy and a corrupt enterprise or organization for the sale and delivery of heroin and fentanyl in the Monroeville area at that time. **The evidence may be relevant in establishing the Defendant's involvement in activities that lead to the charges at case No. 168, even though the conspiracy and corrupt organization had ended prior to March of 2019.** The alleged activities in the separate cases took place within a short period of several weeks.

Order, 8/28/19, at 2-3 (pagination supplied; emphasis added).

Johnson's two cases involved the same criminal episode, mere efficiency in trying Johnson's two cases together in the same county does not overcome his constitutional right to be tried in the locality where the crimes of which he is alleged to have committed took place.

For the foregoing reasons, I would reverse Johnson's convictions at Case 169-2019 and remand for the case to be transferred for a new trial in Allegheny County. Accordingly, I dissent.