J-A29023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SIMON EUGENE GIGEE | : | |
| | : | |
| Appellant | : | No. 1118 WDA 2024 |

Appeal from the Judgment of Sentence Entered August 5, 2024
In the Court of Common Pleas of Potter County Criminal Division at
No(s):  CP-53-CR-0000202-2022

BEFORE:  OLSON, J., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED: February 27, 2026**

Appellant, Simon Eugene Gigee, appeals from the judgment of sentence entered on August 5, 2024.  In this direct appeal, Appellant's counsel filed a petition for leave to withdraw and an accompanying brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967) and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We conclude that Appellant's counsel has complied with the procedural requirements necessary to withdraw.  Moreover, after independently reviewing the record, we conclude that the appeal is wholly frivolous.  We, therefore, grant counsel's petition to withdraw and affirm the judgment of sentence.

The trial court ably summarized the underlying facts and procedural posture of this appeal:

> [Appellant] was charged . . . with the following: [theft by deception (at Count 1); criminal attempt to commit theft by deception (at Count 2); and receiving stolen property (at

Count 3).] These charges resulted from two incidents that were both alleged to have occurred on July 4, 2022, at the respective businesses of Paul Troyer and Jacob Miller. Both Mr. Miller and Mr. Troyer [are] members of the Amish faith and both operated Amish stores in Ulysses, Pennsylvania, on the day in question. Regarding Counts 1 and 3, the Commonwealth alleged that on July 4, 2022, [Appellant] intentionally and knowingly purchased items at Mr. Troyer's store using a $100 counterfeit bill. Regarding Count 2, the Commonwealth alleged that on the same day, [Appellant] intentionally and knowingly attempted to make purchases at Mr. Miller's store using a counterfeit $100 bill but was unsuccessful. Upon receiving the bill from [Appellant], Mr. Miller marked it using a counterfeit detector pen, often referred to as bank marker, and determined the bill to be counterfeit. Mr. Miller then confronted [Appellant] and [Appellant] made purchases using other money. . . .

Importantly, the bill was returned to the [Appellant's] possession and he left Mr. Miller's store with the bill. Previously, on June 16, 2022, [Appellant] allegedly passed a different $100 counterfeit bill in Mr. Miller's store when Mr. Miller's son was working. [Appellant] was not charged in relation to the June 16, 2022, incident.

A two-day jury trial was held in the above-captioned matter on May 29, 2024, and May 30, 2024. The Commonwealth anticipated that Mr. Troyer would testify at trial in support of the allegations surrounding Counts 1 and 3. Mr. Troyer did not appear, however, resulting in the Court granting [Appellant's] motion for acquittal on Counts 1 and 3. Count 2 was submitted to the jury for determination and after deliberation the jury found [Appellant] guilty. On August 5, 2024, [Appellant] was sentenced to serve [eight to 16] months of incarceration.

Trial Court Opinion, 10/30/24, at 1-2.

Appellant filed a timely notice of appeal.[1]  Further, on appeal, Appellant's counsel filed a petition for leave to withdraw and an ***Anders*** brief.

Before reviewing the merits of this appeal, this Court must first determine whether counsel has fulfilled the necessary procedural requirements for withdrawing as counsel.  ***Commonwealth v. Miller***, 715 A.2d 1203, 1207 (Pa. Super. 1998).

To withdraw under ***Anders***, counsel must satisfy certain technical requirements.  First, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous."  ***Miller***, 715 A.2d at 1207.  Second, counsel must file an ***Anders*** brief, in which counsel:

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

---

[1] This Court has held that, "[a]bsent a breakdown in the operations of the court, time limitations on the taking of appeals are strictly construed and cannot be extended as a matter of grace." ***Commonwealth v. Valentine***, 928 A.2d 346, 349 (Pa. Super. 2007) (quotation marks, citations, and corrections omitted).  Here, however, there was a "breakdown in the operations of the court" and – in accordance with our precedent – the breakdown renders Appellant's notice of appeal timely.

Finally, counsel must furnish a copy of the *Anders* brief to his or her client and advise the client "of [the client's] right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention." *Commonwealth v. Woods*, 939 A.2d 896, 898 (Pa. Super. 2007).

If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Santiago*, 978 A.2d at 355 n.5; *see also Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*) (holding that the *Anders* procedure requires this Court to review "the entire record with consideration first of the issues raised by counsel. . . . [T]his review does not require this Court to act as counsel or otherwise advocate on behalf of a party. Rather, it requires us only to conduct a review of the record to ascertain if[,] on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated. We need not analyze those issues of arguable merit; just identify them, deny the motion to withdraw, and order counsel to analyze them"). It is only when all of the procedural and substantive requirements are satisfied that counsel will be permitted to withdraw.

In the case at bar, counsel complied with all of the above procedural obligations. We must, therefore, review the entire record and analyze whether this appeal is, in fact, wholly frivolous. Our analysis begins with the claims raised in the *Anders* brief:

[1.] Whether there was sufficient evidence to find Appellant guilty beyond a reasonable doubt to the charge of criminal attempt – theft by deception – false impression[?]

[2.] Whether the trial court erred in admitting evidence that was not properly authenticated at trial, specifically the [trial] court erred when admitting a $100 bill into evidence that was not properly authenticated by the Commonwealth at trial[?]

Appellant's Brief at 7.

Appellant first claims that the evidence was insufficient to support his conviction for attempted theft by deception – false impression. We review Appellant's sufficiency of the evidence challenge under the following standard:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Callen*, 198 A.3d 1149, 1167 (Pa. Super. 2018) (citations and quotation marks omitted).

- 5 -

In relevant part, the crime of theft by deception is defined as:

> A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:
>
> > (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise.

18 Pa.C.S.A. § 3922(a)(1).

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a).

As the trial court explained, the evidence was sufficient to support Appellant's conviction for attempted theft by deception:

> Here, clearly the evidence established that [Appellant] attempted to make purchases at Mr. Miller's store using a counterfeit $100 bill, satisfying the *actus reus* elements of the offense. Mr. Miller testified that in June of 2022, his bank provided him with a marker used for identifying counterfeit bills. Mr. Miller explained that when the bank marker was used on a legitimate bill, the mark would change colors and, [eventually], fade; however, if the bank marker was used on a counterfeit bill, the color of the mark would not change, but would remain dark. . . .
>
> Mr. Miller continued that on July 4, 2022, at around noon, [Appellant] entered Mr. Miller's store and attempted to make purchases using a $100 bill. Mr. Miller could not recall specifically what items [Appellant] attempted to purchase, but he testified that the approximate value of those items was between $15 [and] $18. Mr. Miller testified that when [Appellant] handed Mr. Miller the $100 bill to pay for the items, Mr. Miller instantly realized that the bill did not appear

- 6 -

to be real. Mr. Miller then marked the bill with the aforementioned bank marker and the mark remained dark and did not fade, indicating that the bill was counterfeit. Based on this, Mr. Miller determined the bill to be counterfeit and confronted [Appellant]. The $100 bill was presumably given back to [Appellant] by Mr. Miller, as [Appellant], according to Mr. Miller, put some items back and made purchases using a legitimate $20 bill after the confrontation.

The $100 bill [Appellant] allegedly tried to pass at Mr. Miller's store was not produced at trial. However, Mr. Miller testified that the $100 bill [Appellant] attempted to pass to him was very similar, if not identical, to the counterfeit $100 bill [Appellant] allegedly passed to Paul Troyer on the same day. Mr. Miller testified that after the incident occurred, Mr. Miller met with Mr. Troyer at Mr. Troyer's leather shop that same day or "a day or so later." At the time, Mr. Miller and Mr. Troyer lived only approximately five miles apart. Mr. Miller averred that while there, he was able to closely examine the bill [Appellant] allegedly passed to Mr. Troyer and believed it to be counterfeit, testifying that it "felt more papery like" and was a "little bit thinner." Further, Mr. Miller testified that the bill displayed red "Chinese" markings or writing on it and that "it just didn't feel like a real hundred dollar bill." The Commonwealth then asked Mr. Miller how this bill compared to the bill [Appellant] attempted to pass[] to him on July 4, 2022, and Mr. Miller answered that it was "very similar" and that he told State Police that "[i]t appeared like the same bill."

Thus, there is sufficient evidence of record showing that [Appellant] attempted to make purchases at Mr. Miller's store on the day in question using counterfeit money, satisfying the substantial step element.

. . .

In addition, there was sufficient evidence presented for the jury to conclude beyond a reasonable doubt that [Appellant] knew the $100 bill he attempted to pass to Mr. Miller on July 4, 2022, was counterfeit and that [Appellant] intended to deceive Mr. Miller. "The *mens rea* for theft by deception is this intent to defraud." ***Commonwealth v. Grife***, 664 A.2d 116, 120 (Pa. Super. 1995).

- 7 -

First, the evidence reflects that the bill's features and feel made it readily distinguishable from legitimate currency. As noted above, Mr. Miller testified that as soon as [Appellant] handed him the bill, Mr. Miller suspected that it was fake. Additionally, Mr. Miller testified that the $100 bill [Appellant] attempted to pass to him was very similar, if not identical, to the $100 bill Mr. Troyer later showed him. . . . Mr. Miller testified that this bill "felt more papery like," was a "little bit thinner", had red "Chinese" markings or writing on it, and that "it just didn't feel like a real hundred dollar bill." Additionally, the evidence shows that [Appellant] had counterfeit bills in his possession as early as June 16, 2022. It is difficult to believe that [Appellant] possessed counterfeit bills for weeks before the July 4, 2022 incident and did not notice during all this time that the money was counterfeit based on the observable nature of the bills.

Additionally, the fact that [Appellant] argued with Mr. Miller after being confronted also evidences criminal intent. According to Mr. Miller, [Appellant] asked Mr. Miller if the marker Mr. Miller used on the bill was real and if it really worked. Mr. Miller testified that [Appellant] "questioned me quite hard" subsequent to confronting [Appellant]. The jury could have reasonably inferred that [Appellant] argued so vigorously with Mr. Miller because [Appellant] was afraid of facing consequences if Mr. Miller were to report the incident to police. This incentivized [Appellant] to argue with Mr. Miller in an attempt to convince Mr. Miller that the bill was legitimate. Moreover, why did [Appellant] attempt to use a $100 bill to pay for $ 15 [to] $18 worth of items while having a $20 bill on hand? The likely explanation is that [Appellant] knew the $100 bill was counterfeit and did not want to use real money to buy the items. The jury, as well, could have reasonably inferred such.

Further, there was evidence showing that [Appellant] acknowledged passing a counterfeit $100 bill at Mr. Miller's store on June 16, 2022, as referenced above. Specifically, Mr. Miller testified that approximately a week after the July 4, 2022, incident, [Appellant] again appeared in Mr. Miller's store regarding a pair of boots [Appellant] previously purchased from Mr. Miller's store. While there, [Appellant] acknowledged that [Appellant] passed a counterfeit $100 bill

- 8 -

at Mr. Miller's store on June 16, 2022, and that [Appellant] wanted "to make it right."

In relation thereto, Trooper Whitney Boshart of the Pennsylvania State Police testified that she interviewed Mr. Miller on July 25, 2022, at Mr. Miller's store regarding the July 4, 2022 incident. Trooper Boshart averred that during the interview, Mr. Miller related that [Appellant] came into Mr. Miller's store on June 16, 2022, while Mr. Miller's son was working and purchased packs of candy using a $100 bill and received change. Inferably, this was the counterfeit $100 bill that [Appellant] later wanted to "make right" with Mr. Miller. However, [Appellant's] use of such a large bill denomination to buy candy is revealing of [Appellant's] state of mind. When taken into consideration with the other evidence, the jury could have easily inferred that [Appellant] chose to use a $100 bill to purchase the candy, instead of using lesser bill denomination, because he knew the $100 bill was counterfeit. [Appellant] may have wanted to ascertain whether anyone at Mr. Miller's store would detect the counterfeit money. Regardless, because it can be reasonably inferred that [Appellant] knew the $100 bill he successfully passed weeks earlier on June 16, 2022, was counterfeit, it can then be reasonably inferred that [Appellant] also knew the $100 bill he attempted to later pass on July 4, 2022, at the same store was counterfeit as well.

Finally, the Commonwealth presented testimony that [Appellant] made statements to police after his arrest, which tended to show [Appellant's] consciousness of guilt when taken into consideration with the other evidence. Specifically, Trooper Coby Sebastian of the Pennsylvania State Police testified that on August 1, 2022, he arrested [Appellant] at [Appellant's] residence after a warrant was issued in relation to the matter. First, Trooper Sebastian testified that after being taken into custody, [Appellant] claimed that he found the $100 bill on his front porch and took it to Mr. Miller's store to spend it. This is a hard-to-believe explanation, and one can reasonably infer that [Appellant] was lying in order to conceal his culpability. Further, Trooper Sebastion testified that [Appellant] also related that "his girlfriend was the first one to attempt to pass one at Mr. Miller's store" and because of this "he shouldn't be in trouble she should be."

> The above evidence of record supports the jury's finding that [Appellant] knew the $100 bill he attempted to make purchases with at Mr. Miller's store on July 4, 2022, was counterfeit and in doing so [Appellant] intended to deceive Mr. Miller by way of a false impression.

Trial Court Opinion, 10/30/24, at 4-9 (some citations omitted).

We agree with the trial court's able explanation and conclude that Appellant's first claim on appeal is frivolous.

Second, Appellant claims that the trial court erred when it admitted the $100 bill into evidence at trial. Appellant's Brief at 14. However, as the trial court explained, the $100 bill was not admitted into evidence at trial. *See* Trial Court Opinion, 10/30/24, at 10 (explaining: "[t]he $100 bill was not admitted into evidence at trial due to a lack of authentication"); *see also* Appellant's Brief at 14 (acknowledging that the claim of error is frivolous, as "the $100 bill was not admitted into evidence for lack of authentication"). Thus, Appellant's second claim on appeal is also frivolous.

We have independently considered the issues raised within Appellant's brief and we have determined that the claims are frivolous. In addition, after an independent review of the entire record, we see nothing that might arguably support this appeal. The appeal is therefore wholly frivolous. Accordingly, we affirm Appellant's judgment of sentence and grant counsel's petition for leave to withdraw.

Petition for leave to withdraw appearance granted. Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 02/27/2026